## Simonton's Estate.

An agreement to deliver a deed as an escrow to the person in whose favour it is made will not make the delivery conditional; but if delivered under it, it is an absolute delivery, and a consummation of the execution of the deed.

One who is jointly bound in a recognizance with another, cannot, either in his own, or in a representative capacity, maintain an action upon the recognizance against his co-recognizor.

APPEAL from the decree of the orphan's court of *Dauphin* county, in the matter of apportioning the assets among the creditors of the estate of John W. Simonton deceased.   The facts of the case which gave rise to the decision of any principle of law, are fully stated in the opinion of the Court, which was delivered by

KENNEDY, J.—The contest in this case lies between persons claiming to be creditors of John W. Simonton, under recognizances entered into by him in his lifetime.   He and his brother William, in May 1813, after the death of their father, who died intestate, leaving real estate, a widow and six children, took the real estate, appraised at 5637 dollars and 72 cents, under a decree of the orphan's court of Dauphin county ; and entered into a joint and several recognizance, conditioned for paying to the other heirs their respective proportions of the appraisement, and the interest on the one-third thereof to the widow during her life.

In September 1820 John W. Simonton, as surety for John M'Cord, appointed guardian for Jonas Rudy and Peggy or Margaret Rudy, minor children of Jonas Rudy the elder, deceased, entered into a joint and several recognizance with M'Cord, conditioned for the faithful performance by the latter of his duties as guardians of the minors.   Afterwards, on the 22d of June 1827, John M'Cord, upon settlement of his guardianship account, fell in debt to his ward, John Rudy, 516 dollars and 79 cents, with interest thereon from the 28th of March 1826 ; and to Margaret Rudy, his other ward, 492 dollars and 47 cents, with interest thereon from the 28th of March 1826 ; which sums of money the orphan's court decreed him to pay. He, however, being insolvent and unable to pay any part of these two sums, and still continuing to be so, they, with the interest due thereon, are claimed from the estate of the surety John W. Simonton, which is only sufficient to pay part of them.

The widow died in September 1824 ; and a claim is set up by William Simonton, the co-recognizor of John W. Simonton, for interest which became due on the recognizance every year from 1814 till her death, amounting in the whole to 644 dollars and 29 cents. The widow lived with John, in his family, on the land, from the time

that he and William took it until she died ; and it is a matter of contest whether John had not supported and maintained her in satisfaction of the interest falling due to her annually upon the recognizance. It does not appear that he had given her any thing in any other way.

William and John W. Simonton, after they took the land, made a division of it between them ; and, as it is said, each thereby agreed to pay his proper proportion of the recognizance given on account of it.

Jane Clark, one of the sisters of William and John, and formerly wife of John Clark, since dead, claimed the one half of the whole amount of her distributive share of the valuation money of the land, alleging that John had never paid her any thing. To this claim it was objected and shown, that she and her brother James, on the 3d of April 1824, joined in executing a deed of release of that date to William Simonton and John W. Simonton, the recognizors, releasing them from all claim under the recognizance ; and giving up all claim to the land in consideration of 1812 dollars and 17 cents, thereby acknowledged to have been paid by the recognizors to the releasors. This release was acknowledged on the same day before a justice of the peace of Dauphin county, and delivered to William Simonton in the presence of John. But it was alleged, and James Simonton, one of the releasors, testified, that at the time of executing the release it was agreed that it should not operate as such, notwithstanding the delivery of it to the releasees, until the money was paid. He further testified, that no money was paid by either William or John at that time ; but that John gave his notes to Jane Clark to secure to her the payment of his part. That William, as was then stated, had paid some part of his portion before that, and promised them to pay the residue. Now, the very testimony adduced for the purpose of preventing the release from having any effect as such, shows that there was a complete execution of it. That it was not only signed and sealed, but delivered by the releasors to the releasees. An agreement to deliver a deed as an escrow to the person in whose favour it is made, and who is likewise a party to it, will not make the delivery conditional. If delivered under such an agreement it will be deemed an absolute delivery, and a consummation of the execution of the deed ; for in *traditionibus chartarum, non quod dictum, sed quod factum est inspiciatur. Shep. Touch.* 59, *tit. Deed* ; *Co. Litt.* 36, *a* ; Thoroughgood's case, 9 *Co.* 137, *a* ; *Cruise's Dig.* 30, *tit.* 37, *Deed, ch.* 2, *sec.* 58. To construe such agreements otherwise would not only be putting it in the power of the party in whose favour the deed is made to practise a fraud upon the community by means of it, in obtaining a credit that otherwise would not be given to him, but would be opening a wide door for the introduction of frauds and perjuries. It is not easy to conjecture why the release should have been made and delivered as it was, if it were not for the purpose of putting it in the power of John W. Simonton and William Simonton to show that they held the land discharged from all claim arising

out of the recognizance on the part of the releasors.   Under this view, it would certainly be very unjust now to set the release aside for the purpose of preventing the creditors of John W. Simonton from receiving their debts.   I am therefore inclined to think that the whole of Jane Clark's claim must be rejected.

William Simonton, the joint recognizor of John W. Simonton, as the administrator of Elizabeth Simonton, another sister, has presented a claim for her distributive share under this recognizance.   A release also for two-thirds of her portion was executed and delivered by her in her lifetime to her brothers, the recognizors ; for which,.it is said, no money was ever paid by John.   I, however, do not consider it necessary to examine and weigh the evidence with all the circumstances testified to in regard to the execution of this release, and the other claim brought forward by William Simonton as the administrator of his mother, the widow.   He was as much bound by virtue of the recognizance for the payment of them as John was, or his estate is now.   It is first proper to observe, however, that it is far from being clear that these claims on the part of John's kindred have not been resuscitated and gotten up again for the purpose of defrauding his just creditors.   To say the least of it, there is certainly a degree of obscurity about them which seems to be sufficient to repel the interposition of any equitable power which this court may have, that otherwise might be exercised in their favour.   I, therefore, think that the parties must be made to stand upon their legal rights.   William Simonton, then, being a joint recognizor with John W. Simonton, was equally bound with the latter for the payment of these claims that he has presented here as the administrator of his mother and sister respectively, against the estate of John. The moment that he administered on the estates of his mother and sister respectively, the right to sue John, or his personal representative, on their behalf, became extinct : and he being jointly bound with John in the recognizance was, in contemplation of law, considered to have the amount in his own hands ; and might have been sued immediately by the creditors of his mother and sister respectively, if they had any, and compelled to pay the same as assets in his hands to the full amount coming from John, as well as himself, to each of them on the recognizance.   And if, at the end of the year from his having taken out letters of administration, any surplus remained after paying the debts, he was bound and liable to pay it over to the next of kin of his mother and sister, according to the provisions of the intestate law.   But if he has paid and settled the amount coming to his mother and sister respectively on the recognizance, then he has a claim for contribution against the estate of John, provided he has paid more than his proportion according to the agreement made between them ; and is a *simple* contract creditor of the estate of John for the amount whatever it may be.   But, as he has no claim upon the recognizance ; and the *fund in* the hands of the administrator of John being insufficient in amount to

[Simonton's Estate.]

reach any inferior grade of debts, William Simonton is, therefore, not entitled to receive any part of the 1241 dollars and 64 cents in the hands of the administrator of John W. Simonton.

The decree of the orphan's court is reversed, and the whole of the money in the hands of the administrator is decreed to be appropriated and paid *pro rata* in discharge of the claims of Jonas Rudy and Margaret Rudy. It is also decreed, that the clerk's fees on the appeal be paid by the appellants; but that the costs in the court below be paid by the appellees.

Decree accordingly.

*Harris* and *M'Clure*, for appellants.
*M'Cormick* and *M'Kinney*, for appellees.