## CHARLES H. VALENTINE *vs.* JOHN WHEELER.

Worcester. Sept. 29, 1874. — Jan. 9, 1875. COLT & MORTON, JJ., absent.

In an action against a surety on a bond, bearing in the appropriate place a signature apparently that of the principal above that of the surety, the answer was a general denial. The surety, at the trial, admitted his signature to the bond, but objected to the admission of the bond in evidence without proof of its execution by the principal. *Held,* that the bond was rightly admitted in evidence.

The production of a bond by the obligee from his own possession is competent evidence that it has been duly delivered to him.

In an action against a surety on a bond, conditioned for the payment by the principal of all demands, acceptances or indorsements and obligations for which the obligee should in any way become responsible on account of a firm of which the principal was a member, and for the saving the obligee harmless from any loss on account of any debt or liability of the firm, evidence that the principal obligor purchased goods of a third party; that the obligee accepted a draft purporting to be drawn by the firm; that the principal obligor said that he drew it; that it was indorsed by the third party as collateral security for a debt; is competent to show that the signature of the firm was genuine, and, in the absence of evidence that a draft was drawn against funds in the hands of the acceptor, sufficient to prove that the acceptance was given under the bond.

A. gave a bond, with sureties, to B., in a penal sum, conditioned to hold B. harmless from liability for any acceptances made by B. for A. After this, B. accepted a draft drawn by A., and the holder of it sued B. and recovered judgment. B. paid a sum less than the face of the judgment, and the judgment was entered as satisfied. *Held,* in a suit on the bond against one of the sureties, that B. was entitled to judgment for the penal sum.

CONTRACT upon a joint and several bond in the sum of $40,000 alleged to have been executed by John P. Wheeler, as principal and the defendant and Edward H. Valentine, as sureties, the condition of which was that John P. Wheeler should pay all demands, acceptances, or indorsements and obligations for which Charles H. Valentine is in anywise responsible for or on account of the firm of John P. Wheeler & Co., and hold and save said Valentine harmless and free from loss or inconvenience on account of any debt, claim, demand or liability of the firm of said John P. Wheeler & Co. Answer: A general denial.

At the trial in the Superior Court, before *Allen,* J., the defendant admitted his signature to the bond, and the plaintiff then offered the bond in evidence, without any proof of its execution by John P. Wheeler, the alleged principal. The defendant ob-

jected to the admission of the bond in evidence, but the judge admitted it.

The plaintiff then called George M. Chapman, who testified in substance as follows : " I knew of John P. Wheeler buying of Isaac L. Hunt, in 1859, about $2000 worth of goods." (Two drafts were shown the witness, one dated February 10, 1859, for $1074.74, and the other dated February 24, 1859, for $1074.75, both payable six months after date, and drawn on Charles H. Valentine, and purporting to be signed by John P. Wheeler & Co., and accepted by said Valentine.) " John P. Wheeler said he drew them. I was at my desk when I saw the drafts. It was after the purchase of the goods. Wheeler, Valentine, Hunt and a clerk were present. Hunt indorsed them. I think they were signed and accepted at my desk. They were accepted and indorsed at my desk, with my ink. I think I saw them accepted. I lent money to Hunt on the drafts. They were delivered to me, and were duly protested. I have had control of the acceptances ever since. Prior to August 31, 1860, Isaac L. Hunt assigned his property and effects to Samuel I. Hunt, in trust, for the benefit of his creditors under the laws of the State of New York. In September, 1860, I directed a suit to be brought against C. H. Valentine in the Supreme Court for the county of New York, in the name of Samuel I. Hunt, on said drafts, and obtained judgment." (A copy of the record of judgment was here put in, showing a judgment in said court on September 21, 1860, for $1862.25, against Valentine, in favor of Samuel I. Hunt, assignee of Isaac L. Hunt.) " Valentine assigned the bond in suit to me on February 18, 1861. In 1867, Valentine paid me $500. I never received anything to pay the drafts except the bond and the $500. The bond assigned was delivered to me as security for my debt. Valentine requested me to collect it for my own and his benefit, and other parties. In 1867, I directed Samuel I. Hunt to enter satisfaction of the judgment, and it was done. The $500 was paid to obtain satisfaction of the judgment. The bond had been in my possession since 1861." This was all the evidence in the case.

The defendant asked the judge to direct a verdict for the defendant, on the ground that no breach of the bond was shown. The judge declined so to direct the jury, and instructed them

that they might find on the evidence a breach of the bon l. The jury found for the plaintiff, and the defendant alleged exceptions.

*F. P. Goulding*, for the defendant. 1. The bond was not shown to have been duly executed and delivered. The bare admission of the defendant Wheeler's signature did not amount to an admission of the execution and delivery of the bond so as to bind him, because proof of the execution by the principal was essential. *Russell* v. *Annable*, 109 Mass. 72. *Bean* v. *Parker*, 17 Mass. 591. *Wood* v. *Washburn*, 2 Pick. 24. Otherwise it would not appear that the defendant ever entered into the contract declared on. The surety might sign first, and leave the instrument to be signed by the principal afterwards. The order of the signatures is not material, if the bond has been fully executed by all who purport to be parties to it. *Rundell* v. *La Fleur*, 6 Allen, 480. *Non constat* that the name of the principal was not forged after the surety signed. [WELLS, J. Is not the signature of the surety some evidence that it was executed by the principal ?] I do not understand that it is.

2. The execution of the drafts was not proved. If there was any evidence to go to the jury tending to show the acceptance, there was no evidence whatever, as against the defendant, that they were the drafts of John P. Wheeler & Co. The rule that the acceptance is an admission by the acceptor of the genuineness of the drawer's signature, has no application in this case. It is a rule adverse to the acceptor, and not in his favor. 1 Pars. Notes & Bills, 320, and cases cited.

3. There was no evidence that the acceptances were within the terms of the bond. They do not appear to have been accommodation acceptances. The presumption is that the acceptor had funds of the drawer, and in the absence of proof the acceptances would seem to be the proper debt of Valentine. There is nothing to control the presumption that the drafts were drawn against funds. 1 Pars. Notes & Bills, 323. *Primâ facie*, an acceptor is liable for his acceptance upon his own account, and not on account of the drawer. If the acceptances were for the accommodation of the drawer, that was open to proof. The whole condition of the bond shows that it was intended as an indemnity against liability for the debts of John P. Wheeler & Co. As the proof stands, Valentine was obliged to pay in part his own debt.

4. There was no breach of the bond, the judgment obtained against Valentine having been discharged before suit.  *Hayden* v. *Smith,* 12 Met 511.    *Wallis* v. *Carpenter,* 110 Mass. 347.

*F. A. Gaskill,* for the plaintiff.

DEVENS, J.   The facts which it was necessary for the plaintiff to prove in order that he might recover were established by competent, and, in the absence of contradiction thereof, sufficient evidence.

1. Assuming that it became necessary, inasmuch as the defendant executed the bond as surety for the plaintiff, to show also that there was an execution thereof by the principal, yet, when the signature of the defendant was proved by his own admission of its authenticity, the fact that there was a signature above his own, apparently that of the principal, and in the appropriate place for such signature, upon the bond produced by the obligee, furnished some evidence, as against the surety, that the bond had been executed by the principal.   The production of the bond by the obligee from his own possession also tended to show that it had been delivered to him.

2. There was evidence of the purchase of goods by J. P. Wheeler of Hunt, of his presence with the plaintiff and Hunt at the time the drafts were indorsed and accepted, and of his admission at this time that he had drawn them, and these facts were competent in order to prove that the signature upon such drafts, purporting to be that of J. P. Wheeler & Co., was genuine.

3. The evidence that drafts were given by J. P. Wheeler & Co. to the seller of goods to them, which drafts were accepted afterwards, was competent in order to prove that the acceptances were given under the bond.   As, by the terms of the bond which the obligors executed, it was to be void only upon payment by J. P. Wheeler & Co. of all " demands, acceptances," &c., for which " said Valentine is in anywise responsible for or on account of said firm of J. P. Wheeler & Co.," it could not be presumed, as against Valentine, that the drafts were drawn against funds of J. P. Wheeler & Co. in his hands.

4. The nominal plaintiff, Charles H. Valentine, who assigned the bond in suit to the holder of the acceptances after judgment thereon, and further paid the sum of $500 upon such judgment, has been made responsible upon the acceptances, and has suffered

loss to the extent, at least, of the $500 paid by him. There has been, therefore, a breach of the bond, and judgment should be entered for the penal sum; but the inquiry for how much of the penal sum execution should issue is not here presented. Gen. Sts. *c*. 133, §§ 9, 10.                    *Exceptions overruled.*