**T. L. PATRICK & SON v. GINNERS' MUT. UNDERWRITERS ASS'N OF TEXAS.**
(No. 1526.)

(Court of Civil Appeals of Texas. El Paso. Nov. 22, 1923.)

Insurance ⬮141(2)—Waiver or estoppel to deny validity of fire policy for nonpayment of premium not shown.

Where mutual fire insurance company, chartered under Mutual Fire Insurance Law (Vernon's Sayles' Ann. Civ. St. 1914, art. 4905 et seq.), in letter accompanying policy requested prompt remittance of premium, and where the company had never extended credit to the partnership named as the insured, and had never extended credit for premiums on the particular property being insured, but had merely, on various occasions, extended credit on policies covering other properties owned by the members of the firm, there was no waiver or estoppel precluding the company from denying validity of fire policy, because of nonpayment of premium under provisions of policy and of constitution and by-laws made a part thereof that the policy should not take effect until payment of premium.

Appeal from District Court, Pecos County; C. R. Sutton, Judge.

Suit by T. L. Patrick & Son against the Ginners' Mutual Underwriters Association of Texas. Judgment for defendant, and plaintiffs appeal. Affirmed.

Jno. B. Howard, of Pecos, and W. A. Hadden, of San Antonio, for appellants.

Locke & Locke and Paul M. O'Day, all of Dallas, for appellee.

HIGGINS, J. T. L. Patrick and Clyde Patrick, appellants, composing the partnership of T. L. Patrick & Son, brought this suit against the appellee to recover upon a fire insurance policy written by the latter covering a gin owner by appellants, situate at Buena Vista, Pecos county.

The defendant, among other defenses, set up that it was not liable because the contract of insurance had not been completed, and further defended upon the ground that its constitution and by-laws provided that the payment of any loss was contingent upon the payment of the deposit as required, that the policy contained like provisions, and such premium had not been paid at the date of the fire.

On October 3, 1921, appellants forwarded to appellee their application for insurance, accompanied by letter reading:

"Dabney White, Sec'y, Ginners' Mutual Underwriters Ass'n, Tyler, Texas—Dear Sir: We are inclosing herewith our application for $5,000 policy on our Buena Vista gin. Kindly advise us if this risk is acceptable to your company, and we will send you check for the premium upon receipt of this advice from you."

The application requested that any loss under the policy be made payable to John Guitar and Murray Gin Company, lienors, as their interest might appear.

In response to this letter and application, appellee, on October 4, 1921, forwarded to Patrick & Son the policy sued upon, accompanied by letter reading as follows:

"T. L. Patrick & Son., Ft. Stockton, Texas—Gentlemen: We have yours of the 3d inst., inclosing application for policy covering your Buena Vista plant, and in reply we hand you herewith policy No. 44371 for $5,000 for the year ending October 4, 1922, and bill for premium $150, for which please let us have your remittance promptly and oblige.

"We note you ask that the policy be made payable in case of loss to John Guitar and the Murray Company. We are making it payable to assured for several reasons: First is that Murray is covered on his engine in his $4,000 policy; and second—and confidentially—we do not want anything to do with John Guitar; we recently having canceled all our policies on his plants, seven in number.

"Yours truly, Dabney White, Secretary."

The policy was received and retained by appellants. Upon November 5, 1921, the

property insured was destroyed by fire. Prior to the fire the premium had not been paid, nor had there been any communication between the parties subsequent to the date of the letters quoted.

Upon the trial a peremptory instruction was given in favor of the defendant, in accordance wherewith verdict was returned and judgment rendered.

In support of the judgment appellee asserts that the undisputed evidence discloses:

First. That the contract between the parties was never consummated because appellee did not issue a policy in accordance with the terms of the application originally made, but submitted to appellants a policy materially different from the one requested, thereby making a counter proposition which required acceptance before it could take effect as a contract, that there was no affirmative act indicative of its acceptance and the letter transmitting such policy required prompt remittance of the premium as a condition of acceptance, and, the same not having been remitted, there had been no effective acceptance.

Second. That the premium had not been paid prior to the fire, wherefore no liability accrued under the terms of the policy.

It is unnecessary to consider the soundness of the first proposition, for, if it be assumed that the retention of the policy by appellants, coupled with the intention upon their part to accept it, operated as a valid acceptance of the same (the correctness of which assumption is doubted by Justice WALTHALL), nevertheless the second proposition is correct, and requires affirmance of the case.

The policy upon its face discloses that appellee was chartered and licensed under the Texas Mutual Fire Insurance Law (Vernon's Sayles' Ann. Civ. St. 1914, art. 4905 et seq.). Its constitution and by-laws were made a part of the policy and printed thereon. Section 12 of the Constitution and by-laws reads:

"It is mutually understood and agreed that the payment of loss to any member is contingent upon said member having paid his deposit as required."

With respect to their failure to pay the premium, appellants pleaded:

"(5) Your plaintiffs say that it is true that at the time of the issuance of said policy same was not paid, but your plaintiffs allege and charge that they have been in the ginning business and operating cotton gins for hire for a number of years, and that they have been members of the defendants, the Ginners' Mutual Underwriters Association of Texas, for a number of years, and that they have had various, divers, and numerous policies upon their gins in Reeves, Ward, and Pecos counties, prior to the issuance of this policy, and that it has been the policy of the defendant to issue its policy of insurance and to extend credit to these plaintiffs, which has been done, and which is their custom, thereby waiving that stipulation and covenant in said policy reading as follows: 'It is mutually understood and agreed that the payment of loss to any member is contingent upon said member having paid his deposit as required.'

"That it is true that this provision was incorporated in the said policy, but that the said company has and did waive same, not only upon this occasion, but upon numerous and prior occasions, in their dealing with their members, or policy holders. That these plaintiffs were well known to defendant, and had been doing business with them for a number of years, and the said company has repeatedly extended them credit for as much as 90 days in the payment of their different policies. Your plaintiffs say that it is true that they sent a cashier's check for the sum of $150 in payment of the said policy, that the same was refused by the defendant and returned to these plaintiffs, and they here and now tender unto the archives of this court, the said sum of $150, in full payment of the premium of said policy."

"(7) Your plaintiffs would further show unto the court that it is true that defendant, through its secretary, Dabney White, wrote a letter inclosing this policy, in which in effect he stated that, if the policy was satisfactory, please remit to cover, but, in view of the custom and the policy of the defendant, these plaintiffs were under the impression that the policy being retained by them, credit was extended as heretofore and thereby retained policy, it therefore became an open account, due from these plaintiffs to the defendant, and on such open account the defendant could have instituted their suit and recovered judgment; that the defendants could have canceled said policy according to the provisions and it being a custom of said company to permit said accounts to run for 30 or 60 days; and by reason of the fact that it failed to exercise its rights given it under such policy by canceling same for nonpayment, and by permitting these plaintiffs to keep said policy without any objection upon its part, they are now estopped from denying liability thereunder. * * *"

In support of these allegations the testimony of the appellants was offered.

T. L. Patrick testified that he had been engaged in the ginning business for 17 or 18 years in Ward, Reeves, and Pecos counties and for the past 10 years had been doing business with appellee through its agent, Dabney White.

"He has issued me policies time and again. I did not always pay cash for those policies when I got them. I always sent them a check, and sometimes they would draw on me through the bank. I sent them checks at different times, and sometimes I would send them right in and at other times I would not. I think a few times he drew on me with the policy attached to the draft. He generally wrote us when the policy would expire, and asked us if we wanted to renew it, and possibly a few times we renewed them and sent them on in and asked us to remit for the policy. The policy which you now show me was issued to me, or rather to T. L. Patrick & Son, and the letter that you exhibit to me, together with the policy, came

to my son. Of course, I didn't see the letter or policy either when they first came, but he told me about it."

Clyde Patrick testified:

"I am a member of the firm of T. L. Patrick & Son; I am a son of T. L. Patrick. I had charge of the gin plant at Buena Vista, and had that plant insured. The policy and letter which you show me came to me together. I received the letter and policy about the 6th or 7th of October, 1921. That gin burned on the 5th of November, 1921. At the time the property burned, the premium due on the policy had not been paid. The reason I had not paid it was because I had not gotten around to it. They sent bill at the time they sent the policy, and I was busy over there all the time. They had been sending the policies out and letting us remit for them as soon as we could. * * *

"I was not associated with my father under the name of T. L. Patrick & Co., and was not associated with him in any of the other gins. I worked for my father, and was in and out all the time. The Buena Vista gin was the only one that I was interested in with my father. I knew the policy of this company with reference to extending T. L. Patrick & Co. and T. L. Patrick & Son credit on policies issued by the company to them. * * *

"I had charge of the Buena Vista gin all the time we owned it, and we bought it in 1920, and I stayed with it until the fire in 1921. I do not remember the exact date we bought it. In the application for insurance, dated October 3, 1921, states that we owned the plant for about one year prior to that time. I could not tell you who carried the insurance prior to that time. I do not know whether there was any insurance on the property. It was my business to look after the insurance after we bought the property, but I don't remember whether there was or was not any insurance—I could not say."

Viewing this evidence in its aspect most favorable to appellants, it shows no more than an extension of credit to T. L. Patrick and T. L. Patrick & Co. on various occasions in the preceding 10 years, upon policies covering properties owned by them other than the Buena Vista gin. There is no evidence of a general custom upon the part of appellee of extending credit to its members. The evidence is insufficient upon which to predicate a waiver or an estoppel. This was the first policy written in favor of T. L. Patrick & Son. Appellee may in the past have been willing to extend credit to T. L. Patrick individually, or T. L. Patrick & Co., but it would not follow that it would be willing to extend it to the new firm of Patrick & Son. Furthermore, appellee had the right to discontinue at any time its practice of extending credit. But whatever may have been its custom in the past, the letter of Patrick & Son, dated October 3d, stated that, if the risk was acceptable to appellee, the appellants would send "check for the premium upon receipt of this advice from you," and in

the letter transmitting the policy prompt remittance was requested. These letters speak for themselves, and show beyond question that prompt payment was expected and demanded, and that it was not the purpose of the appellee to waive the clause in the contract respecting prepayment of the premium as a condition of liability. For like reason appellants had no right to assume that they might delay payment, and there is thus no basis for an estoppel. In our opinion the facts bring it within the rule announced in the recent case of Ginners, etc., v. Fisher, by the Commission of Appeals (238 S. W. 207), and upon that authority the judgment will be affirmed. This view renders it unnecessary to consider other matters discussed in appellants' brief.

Affirmed.