## Eaton *v.* New York Life Insurance Company of New York, Appellant.

Argued May 23, 1933; reargued January 8, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Arthur G. Dickson,* with him *Rockwell & Rockwell* and *Louis H. Cooke,* of New York City, for appellant.

(Hon. D. M. LARRABEE appeared for appellant until elected judge of C. P. Lycoming County.)—The acknowl-

edgment of receipt of the policy was merely prima facie evidence of its payment and could be rebutted.

The receipt was not conclusive proof of payment: Sargeant v. Ins. Co., 189 Pa. 341.

There was no estoppel: Fedas v. Ins. Co., 300 Pa. 555; Atkins v. Payne, 190 Pa. 5.

The public policy of Pennsylvania as expressed by statute requires the payment of the first premium before the policy can become effective: Harrisburg Trust Co.'s Case, 278 Pa. 255; Marland v. Ins. Co., 71 Pa. 393.

The insurer was entitled to show a conditional delivery of the policy regardless of the premium receipt.

Unconditional delivery was a primary fact at issue, independent of the question of premium payment: Snyder v. Ins. Co., 202 Pa. 161.

There was no waiver of the condition of prepayment of premium: Marland v. Ins. Co., 71 Pa. 393.

The proffered testimony as to conditional delivery and nonpayment of premium was competent and admissible.

Statements by the insured at the time of the delivery of the policy and acknowledging the fact that such delivery is conditioned upon the performance of some act, such as payment of premium or a later act of acceptance, are not admissible as declarations against interest, but as part of the res gestæ surrounding the fact of physical delivery: Mickey v. Hardin, 79 Pa. Superior Ct. 592.

*G. Mason Owlett,* with him *Charles G. Webb,* for appellee.—Conversations between strangers to an action cannot be used in evidence against a party to the suit unless that party was present: Slaymaker v. Gundacker, 10 S. & R. 75; Sager v. Lindsey, 118 Pa. 25; Wheeler v. Ahlers, 189 Pa. 138.

Admissions by the insured in a life policy are not receivable in evidence against the beneficiary: Oplinger v. Ins. Co., 253 Pa. 328; Kuhns v. Ins. Co., 297 Pa. 418.

When third parties have acquired rights under a contract such rights cannot be affected by permitting a

parol variation of the agreement between the original parties even though fraud or mistake is alleged: Springer v. Gas Co., 145 Pa. 430.

Proof will never be permitted that no consideration was in fact paid when the contract says it has been, since this would have the effect of wholly defeating the operation of the contract: Real Estate Co. v. Rudolph, 301 Pa. 502.

OPINION BY MR. JUSTICE MAXEY, April 23, 1934:

The question here is whether or not the beneficiary's possession of a policy of life insurance, complete in all its terms and duly executed, and containing a formal acknowledgment of the payment of the first premium is, after the death of the insured, *conclusive* evidence *or* merely *prima facie* evidence that the agent's manual delivery of that policy into the possession of the insured was a *legally operative* delivery.

January 10, 1929, Emma D. Eaton, a nurse residing in Lawrenceville, Tioga County, Pa., but temporarily employed in Elmira, N. Y., applied to an agent, in the latter city, of the New York Life Insurance Company, for a thirty-year endowment policy of life insurance in the amount of $5,000, with double indemnity in case of accidental death. Stella Eaton, her mother, plaintiff and appellee herein, was named as beneficiary, with the right reserved in the insured to change the beneficiary.

March 19, 1929, the policy was issued for delivery to the assured and that was expressly made its effective date. It contained, inter alia, the following provision: "This contract is made in consideration of the application therefor and of the payment in advance of the sum of one hundred seventy-six and $^{45}/_{100}$ ($176.45) dollars, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period terminating on the 19th day of March, 1930."

March 29, 1929, the assured visited her home and gave the policy to her mother. March 31, 1929, while driving to Elmira, she crashed into an abutment and sustained injuries which caused her death a few hours later. April 3, 1929, plaintiff notified defendant of the death, and later defendant refused payment on the ground that the first premium had not been paid and the policy had never been legally delivered to the insured.

The appellee on March 17, 1931, instituted a suit on the policy. The claim was for $10,000 under the double indemnity clause. In the affidavit of defense appellant averred that this policy was handed to the applicant by the company's agent only for the purpose of permitting her to inspect it and to decide whether she would accept this policy, or return it to defendant for cancellation and have another policy for a different amount issued to her, and that it was only on this express agreement and understanding that Emma D. Eaton was permitted to have temporary possession of this policy. Defendant denied that the first annual premium was ever paid to it or to any of its agents, and that the insurance contract ever took effect.

At the trial plaintiff produced in evidence the policy of insurance, including the formal acknowledgment of the receipt of the premium, and also proved the death of the assured by accidental means, and then rested. Counsel for the defendant moved for a compulsory nonsuit for the following reason: "plaintiff failed to prove that the consideration mentioned in the policy was actually paid to the insurance company through its duly authorized representatives." This motion was denied. Defendant then offered in evidence the testimony of agents McEwen and Thomas, who testified that the premium had not been paid and also testified as to the circumstances under which the policy came into the insured's possession. The testimony of agent McEwen was that he in company with Wesley Thomas, took the policy to the insured and undertook to deliver it to her and col-

lect the first premium; that she said to the witness that she did not know whether she wanted that policy or a smaller policy "of something like $2,000," but she requested him to allow her to take the policy home to Lawrenceville, and consult with her mother as to whether she would take it; that he consented to this and "placed this policy in her hands solely and only for inspection"; but neither she nor anyone else ever paid the premium. This offer of evidence was objected to on the ground that "any statement made by the insured cannot be used against the plaintiff in this case, and further that the testimony as to the lack of consideration was incompetent, and that the contract said the premium had been paid, and the effect of the testimony would be to defeat the operation of the contract. There is no affirmation or proof offered that anything was added to, or omitted, from the agreement by fraud, accident or mistake."

The trial judge made conflicting rulings on the admissibility of evidence. After defendant first rested, the case was reopened at defendant's request and it was then testified by defendant's agent that "the policy itself is the official receipt, supposed to be for the first premium." As the record stood when the plaintiff and defendant *finally* rested, the court had stricken out much of the evidence previously received, and particularly had excluded the oral evidence of the agents: (1) that the premium had not been paid, and the policy had been delivered for inspection only; and (2) that Miss Eaton had stated at the time the policy was placed in her hands that she would take the policy home to consult with her mother as to its acceptance. As to (1), the court said, inter alia, that "the fact the premium was not paid to them at that time would not rebut, or would not at least contradict the receipt which they delivered." The court directed a verdict for the plaintiff against the defendant in the sum of $11,550. Defendant appealed. The exclusion of (1) and (2) constitutes the subjects of the chief assignments of error.

That the insured was in lawful possession of this policy when she took it home is conceded. This is not a case where the insured acquired possession of a policy feloniously or by fraud, artifice or mistake. The policy was physically delivered to the insured. If it had been a deed in which she was the grantee, the delivery would in law be absolute. "An agreement to deliver a deed as an escrow to the person in whose favor it is made, and who is likewise a party to it, will not make the delivery conditional. If delivered under such an agreement it will be deemed an absolute delivery, and a consummation of the execution of the deed; for in traditionibus chartarum, non quod dictum, sed quod factum est inspiciatur [in the delivery of written instruments not what was said but what was done is regarded]": Simonton's Est., 4 Watts 180. In Weisenberger v. Huebner, 264 Pa. 316, 320, 107 A. 763, this court said: "If delivered to the grantee named in the deed, the delivery is not conditional but absolute, irrespective of the intention." See also Loughran v. Kummer, 297 Pa. 179, 146 A. 534; McCann v. Atherton, 106 Ill. 31, and Fairbanks v. Metcalf, 8 Mass. 230.

The word "escrow" is not limited to deeds. "The term 'escrow' was originally applied to instruments for the conveyance of land, but is now applied to all written instruments so deposited [with a third person]": 21 C. J., pages 865-6.

The same consideration of public policy which would exclude evidence of the conditional delivery of a deed to the grantee named therein would seem to call for the exclusion of evidence of a delivery "in escrow" of an insurance policy to the insured. However, the authorities have ruled otherwise.

Couch on Insurance, volume 1, section 124, page 230: "Possession of a policy of insurance by the insured is only prima facie evidence of its delivery. And the fact that a life policy acknowledging receipt of the first premium was in the possession of the insured at his death

does not preclude the insurer from showing by parol that the delivery was conditioned upon acceptance by the insured and execution of a promissory note...... Possession of the policy after the death of the insured ordinarily raises the presumption that it has been delivered and paid for, or that credit has been extended. Likewise, delivery of a life policy to the insured, together with its possession after his death by the beneficiary, are prima facie evidence that its recital of a cash payment is correct. And in Missouri a prima facie case is made out by production of the policy and proof of death, the prima facie evidence of delivery arising from the possession of the policy being sufficient to take the question of delivery to the jury" (citing numerous cases).

Jones v. New York Life Ins. Co., 168 Mass. 245, 47 N. E. 92: "The production of the policy by the plaintiff, with testimony that it was found, with other papers of the intestate, in his desk, immediately after his decease, was evidence that it had been delivered as a valid contract of existing insurance: Chandler v. Temple, 4 Cush. 285; Valentine v. Wheeler, 116 Mass. 478; Perley v. Perley, 144 Mass. 107, 10 N. E. 726." The case was submitted to the jury. Gardner v. North State Life Ins. Co., 163 N. C. 367, 48 L. R. A. 714, 717: "The company can show that the manual delivery of the policy was conditional, for this goes to the execution of the contract." Bostwick v. New York Life Ins. Co., 284 Fed. Rep. 256 (1st syllabus): "Possession of policies by insured or his beneficiary, and recitals therein of payment of the first premium, are prima facie evidence only of delivery of the policies and payment of the premium, and may be rebutted." Dunken v. Ætna Life Ins. Co. (Texas), 221 S. W. 691: Whether a life policy acknowledging payment of premiums was delivered, so as to estop the insurer from asserting invalidity of the policy because of nonpayment of the first premium, is for the jury. In Faunce v. State Mutual Life Assurance Co., 101 Mass. 279, it was held that "in defense against an action on a

policy of insurance expressed to have been 'executed and delivered,' but in fact never delivered, by the defendants, parol evidence is admissible that it was agreed between the parties to the instrument that it should issue only as a substitute for a previous policy to be surrendered, which never was surrendered, but enforced and paid."

In Thompson v. Travelers Ins. Co. of Hartford, Conn., 190 N. Y. S. 338, the trial judge submitted to the jury these questions: "What was the intention of the parties when the policy was delivered to Mr. Howard [the assured] on the Wednesday preceding his death? Was the policy delivered as a completed contract, or was it the intention of Mr. Backman [the agent] and Howard that the policy was simply handed over for the purpose of inspection?"

In National Mut. Fire Ins. Co. v. Sprague et al. (Colorado), 92 Pac. 227, it was held that "the recitals of the policy and its possession are at least prima facie evidence that the premium was paid, or that the assessable note was given." In Gardner v. United Surety Co. (Minn.), 125 N. W. 264, "A duly signed policy issued by the defendant was after the death of the insured found amongst his papers. This, together with the admitted facts of its genuineness, established a prima facie presumption that it was in full force and effect; and unless the defendant by sufficient evidence overcame that presumption the jury were justified in finding the policy to be a valid obligation of the defendant." In Kendrick v. Mutual Ben. Life Ins. Co. (North Carolina), 32 S. E. 728, "The plaintiff, to whom the policy was payable, was in possession of the policy, and, the death of the insured being admitted, this made out a prima face case." In Cooley on Insurance, 2d edition, volume 1, page 671: "Whether there has been a delivery at all is a question for the jury." In Snyder v. Nederland Life Ins. Co., 202 Pa. 161, 51 A. 744, the facts are somewhat different from those in the instant case. The action was on a policy of life insurance on which the first premium admittedly

had not been paid. The insured was a local agent of the company and the policy was delivered to him under the agreement that the commissions he should earn should be applied by the company to the premium payment. He died a few weeks later but before he had earned any commissions. The agreement as to the delivery of the policy and as to the manner in which the premium was to be paid was made with the consent of the general agent. It was held by this court that "the company could waive the stipulation, made solely for its protection, that no liability should attach until the first premium was actually paid to it or to its authorized agent, and its general agent could bind it in this regard." That is what the case actually decided, though the court in its opinion said further: "The real question at the trial was whether there has been an absolute delivery of the policy to take effect at once, or only a conditional delivery with the understanding that the policy was not to go into effect until the premium had been earned. This question was for the jury, to whom it was submitted with clear and adequate instructions."

The assignments of error based upon the exclusion of defendant's offer to show by the testimony of the agents that the policy was delivered to the insured *for inspection only* must be sustained, for a jural act "must be final in its utterance. It does not come into existence as an act until the whole has been uttered. ...... The necessity for a delivery of a document, and the nature of a delivery, are here the most usual questions in practice": Wigmore on Evidence, volume 5, 2d edition, section 2404.

In an article by Professor Arthur L. Corbin on "Conditional Delivery of Written Contracts" in "Selected Readings on the Law of Contracts" (page 901), that author quotes ERLE, J., in Pym v. Campbell, 6 El. & Bl. 370, as follows: " 'The evidence showed that there was never any agreement at all; the evidence to vary the terms of an agreement in writing is not admissible but evidence to show that there is not an agreement at all is admissible.' " Page 902: "There has been difference of opin-

ion as to what constitutes a legally operative delivery for specific purposes. Decisions have so shifted the concept behind the term that it is no longer merely the physical transition from one hand to another as a man of business may suppose. It is believed, however, that all still agree that delivery consists of conduct on the part of the grantor or obligor expressive of an intent on his part. . . . . . ."

Whether or not there was a legally effective delivery of this policy, i.e., a final jural act, depends on whether or not the minds of the agent and the insured met on the matter of the finality of the delivery. Did the agent and the insured *intend* the former's manual delivery of the policy to the latter, to be an absolute delivery and acceptance? The answer to this is to be found not only in what was *done* but in what was *said*. What was merely done being not conclusive of the issue, what words accompanied the deeds of manual delivery and acceptance, respectively, become important. These deeds *unaccompanied by words* would indicate an absolute delivery and acceptance. If there were accompanying words, these *might* show that the delivery and acceptance were only conditional. If the issue on a trial was whether or not a person knew a revolver which he had pointed at another and discharged was loaded at the time, his declaration when he pulled the trigger would go far in determining the issue. If he had said, "I am going to shoot you," his remark (assuming it was not made in jest) would prove the existence of harmful intent on his part; if he had said, "See, it isn't loaded," his remark (if made in good faith) would negative the idea of harmful intent.

The difficulty here is not with the principle that declarations are receivable to prove the character of the legally equivocal acts they accompany, but with the fact that the proof of these alleged declarations on the part of the insured must be by "hearsay" evidence, for the insured is dead, and there is no one, except the defend-

ant's agents, who can testify as to what the insured said in physically accepting this policy. Declarations of deceased persons are always received with caution. See Rehm v. Frank, 16 Pa. Superior Ct. 175. "The evidence [of declarations by deceased persons], consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens also, that the witness, by unintentionally altering a few expressions really used, gives an effect to the statement completely at variance with what the party actually did say": 1 Greenleaf on Evidence, 16th edition, section 200.

Such hearsay evidence though viewed with a certain degree of skepticism is frequently admitted in evidence because it does possess some probative value. Thayer in his Preliminary Treatise on Evidence, page 523, refers to "declarations which are a part of some admissible fact,—of the res gestæ, as the phrase is. These are often spoken of as parts of a mass of circumstantial facts described as res gestæ, all evidential, supporting and supported by each other in their tendency to prove some principal fact, instead of being regarded, as they should be, as parts of that fact itself, pars rei gestæ, lying under the curse of hearsay, but received, by way of exception, on account of this special intimacy of connection with the admissible fact." The agents' declarations (if any) when they manually delivered the policy to Miss Eaton and the latter's declarations (if any) at the time she took the policy into her possession were "parts of these facts" of "delivery" and "acceptance" and show whether they were conditional or absolute. COLERIDGE, J., in Wright v. Tatham, 5 Cl. & F. 670, 693: "The act itself being admissible, whatever accompanies it and serves to explain its character is relevant and admissible also."

The credibility of the agents' testimony as to what they said and as to what Miss Eaton said at the vital

moment is for the jury. These witnesses are not incompetent by reason of the fact that they were agents of defendant company. Sargeant v. Ins. Co., 189 Pa. 341, 41 A. 351, holds that "in an action upon a policy of life insurance the agent of the insurance company who made the contract with the insured is not an incompetent witness because the insured is dead. Under the Acts of April 15, 1869, May 23, 1887, and June 11, 1891, an agent who makes a contract is not a party to the thing or contract in action. It is the principal for whom the agent acted who is the surviving party to the contract." On the other hand, the jury must consider whether or not these agents have any bias or interest in the case and, if so, whether or not their credibility is affected thereby and to what extent. The probative value of any material and relevant declaration which gets to the jury only by the vocal utterance of a witness who claims to have heard it and to have remembered it accurately and to repeat it faithfully, can rise no higher than the credibility of that witness.

The beneficiary's lawful possession of a life insurance policy after the death of the insured, and especially when, as here, there is no allegation of fraud, accident, artifice, or mistake, to impeach this possession, prima facie sustains the burden of proof resting on the plaintiff, by raising a strong presumption that the policy was not only manually delivered but was also *legally* delivered to the insured, and puts the defendant in a position where, to avoid an adverse verdict, it must offer evidence of the conditional delivery alleged, sufficiently convincing to countervail the strong presumption of legal delivery arising from the lawful possession of the policy by the beneficiary. In Cambria Iron Co. v. Tomb et al., 48 Pa. 387, 391, this court said in an opinion by Mr. Justice AGNEW: "Legal presumptions are founded upon experience and common observation. When a connection is found to exist between things, so that when one occurs the other is known always or generally to follow, this

connection becomes the foundation of a legal presumption of the existence of the latter from the proof of the former. These presumptions are conclusive when the connection appears to be constant or universal, and prima facie when the connection is general, but not so universal as to establish a conclusive certainty: 1 Greenleaf's Evidence, sections 14-33."

When a duly executed life insurance policy is, after the death of the insured, found in the lawful possession of the family or legal representatives of the insured or of the beneficiary named therein, it is a reasonable inference based on experience and common observation that there had been a legally operative delivery of the policy to the insured. An agent of a life insurance company who delivers a fully executed policy to the insured named "for inspection only," can fully protect his company against a claim later arising from such a conditionally delivered policy by taking an "inspection receipt" from the person to whom the policy is manually delivered. When no such receipt is given and the policy is physically delivered to the insured, who later dies in possession of the policy, the company is justly subject to the presumption that the delivery of the policy was absolute and that it is obligated to the beneficiary as it has in the language of the policy declared itself to be.

If the jury finds as a fact that this policy was delivered to the insured not conditionally but absolutely, the policy becomes conclusive proof of the payment of the first premium, for it so states and thus becomes a complete refutation of the averment (in the affidavit of defense) of the premium's nonpayment. It meets the burden resting on the plaintiff to show payment. "......
In view of the fact that the rule. that a receipt is only prima facie evidence of payment, and may be explained by parol, does not apply when the question involved is not only as to the fact of payment, but as to the existence of rights springing out of the contract, it is generally held that an acknowledgment of payment of the first

premium in a policy which has been delivered is, in the absence of fraud, conclusive on the insurer, and cannot be rebutted in order to avoid liability on the policy": 1 Couch on Insurance, section 115, page 217. Chancellor KENT, in volume 3, page 260, of his commentaries, says: "The receipt of the premium in the policy is conclusive evidence of payment, and binds the insurer, unless there be fraud on the part of the insured." To the same effect are Home Ins. Co. v. Gilman (Ind.), 13 N. E. 118; Benefit Assn. v. Jackson, 114 Ill. 533, 2 N. E. 414; Basch v. The Humboldt Mut. F. & M. Ins. Co., 35 N. J. Law 429, and Fairbanks v. Metcalf, 8 Mass. 230. In Real Estate Co. of Pittsburgh v. Rudolph, 301 Pa. 502, 153 A. 438, this court said: "It would be neither logical nor consistent to hold that the intentional insertion of an actual consideration may be overthrown whenever one of the parties desires to escape liability."

Plaintiff made out a prima facie case by proving the accidental death of her daughter, Emma D. Eaton, and by offering in evidence this fully executed life insurance policy in which she (the plaintiff) was named beneficiary. This raised, as we have stated, a strong presumption that there had been a legally operative delivery of the policy. Defendant, however, had a right to present competent evidence for the purpose of proving that the policy had been delivered for inspection only, i. e., conditionally and not absolutely. What the agents offered to testify, first, as to what *they said* about the policy's delivery, contemporaneously with the handing of this policy to the insured, and, secondly, as to what the *insured said* about its acceptance, contemporaneously with taking this policy into her possession, is competent evidence to prove the character of the delivery—and that is the fact in issue. This evidence should have been received and submitted to the jury under proper instructions. Its credibility and its potency in effecting persuasion are exclusively for the jury's determination.

The judgment is reversed with a venire.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

I am unable to agree with the conclusion of the majority in this case. I believe their conclusion imperils every life insurance policy during the first year of its existence, and opens the door to fraud of the worst character. My reasons for disagreeing, are as follows:

First: It is against public policy to hold that a policy of insurance, bearing the official receipt, may be conditionally delivered to the insured named in the policy, in the absence of fraud, accident or mistake.

Second: Assuming there was a conditional delivery, under the facts so well detailed in the majority opinion, the policy was delivered for acceptance or return for another policy. It is unquestioned that Emma Eaton, the insured, intended to purchase insurance. The record shows that this policy was accepted by the insured.

Third: The "official receipt" in the policy should be regarded as conclusive after the death of the insured, and its effect should not be permitted to be overthrown by the testimony proposed in this case.

Fourth: Assuming that payment had not in fact been made, the policy having been accepted, the first payment called for is merely a debt owing from the insured to the company.

Treating the above subjects a little more in detail: First, I agree with the intimation of the majority that the delivery, under the circumstances, should be held to be absolute, and not conditional. In this respect this policy is similar to a deed. A completed deed cannot be delivered conditionally to a grantee named therein. Delivery is absolute irrespective of any intention or concurrent parol agreements to the contrary: Simonton's Est., 4 Watts 180; Weisenberger v. Huebner, 264 Pa. 316, 320; Loughran v. Kummer, 297 Pa. 179; Mowry v. Heney, 86 Cal. 471, 25 Pac. 17; Elliott v. Merchants Bank & Trust Co., 21 Cal. App. 536, 132 Pac. 280; Whitney v. Dewey, 10 Idaho 633, 80 Pac. 1117; Hubbard v. Greeley, 84 Me. 340, 24 Atl. 799; Blair v. Security Bank

of Richmond, 103 Va. 762, 50 S. E. 262; Richmond v. Morford (Wash.), 30 Pac. 242, 31 Pac. 513. All that is said in connection with the conditional delivery of a deed applies with the same force and logic to the conditional delivery of a completely executed insurance policy to the person insured. The latter has a property right in the policy upon delivery to him as certainly as does the grantee of a deed. It is contrary to the public policy expressed in the careful statutory regulations relating to insurance, to permit the insurer to deliver a completely executed policy having stated thereon its effective date and an acknowledgment of the receipt of the first premium, and to deny its legal effect after the death of the insured. If the company desired to make this policy conditional, it should have taken an inspection receipt.

Second, it is undisputed that decedent applied for the policy in Elmira, N. Y., where it was issued. The policy was in fact delivered to her for acceptance or for rejection for a smaller policy. The policy was handed to the beneficiary, who placed it in a drawer in the dining room, and had it in her possession at all times thereafter until the insured died.

The insured left her home in Lawrenceville, Pa., and was returning to Elmira, N. Y., some distance away. As these circumstances are all admitted by the insurance company, as well as by the beneficiary, there can be no doubt they evidenced an acceptance of the policy. The condition had been fulfilled and the beneficiary had the right to enforce her contract.

On both propositions as submitted, I think that the evidence of the agents is incompetent, either to show conditional delivery or any other fact occurring at the time the policy was delivered if it would have a tendency to defeat the beneficiary's right to recover. The beneficiary is suing in her independent right, which is not dependent on nor representative of the right of the assured. No interest of the assured passed to the beneficiary; she stands in her own right as a party to the contract:

Hamill v. Supreme Council, 152 Pa. 537, 542. "She takes, if she takes at all, in her own right alone as the beneficiary of the fund, and she does not represent any right or interest of her deceased......in the fund. She represents herself and her own rights only in the subject in controversy." See also Frowert v. Blank, 205 Pa. 299, and Solis v. Blank, 199 Pa. 600, which hold that the beneficiary in a beneficial association, upon the death of the member concerned, becomes a creditor. As appellee, then, was suing in her own right, conversations between the assured and appellant's agents are inadmissible since they were not had in the presence of appellee. Wigmore on Evidence, volume 2, 2d edition, section 1081, page 599, states: "In a beneficiary's action for the sum conditioned in a policy of *life insurance,* there is no legal identity of title between the deceased and the beneficiary, although the beneficiary's right is after all no more than the creation of the insured's contract; hence unless the beneficiary has in the beginning been made a party to the contract so as to bind himself to be identified with the insured [and some forms of contract attempt this] the insured's admissions would not be receivable against the beneficiary."

Under the third proposition that the premium had never been paid, we can only reiterate what, as the majority opinion states, is in the policy. Here is a plain, unambiguous and certain statement that money had been paid, and it is certified over the signature of the president and secretary. There is no attempt on the part of the insurance company to introduce evidence that because of fraud, accident or mistake it had not been paid. No such claim is involved in the case, yet the majority opinion permits two agents to say that they did not receive the money, notwithstanding the fact that the money may have been sent to the home office. There were other channels through which the money could have passed. Certainly the testimony of the agents would not be competent to disprove the fact of payment of money

into the hands of the secretary and the president. The only thing that they could say was that decedent did not pay them, but that does not disprove the receipt that is offered in evidence here.

While a receipt for the payment of money may be challenged on the ground that the amount is inaccurate or incorrect, it is a settled rule that a recital of consideration in a deed when it is an operative part of the contractual act may not be denied: Wigmore on Evidence, volume 5, 2d edition, section 2433, page 313; Southard v. Ark. Valley & W. R. Co., 24 Okla. 408, 103 Pac. 750. See Butt v. Smith, 121 Wis. 566, 99 N. W. 328. It must be remembered that the insurance company's own witness testified that the policy itself was the company's official receipt for the first premium. Buttressed by this testimony, the policy constituted a receipt which should not be permitted to be challenged.

Assuming that the first premium had not been paid, as the insurance policy was in fact accepted, that was the entire essence of the contract. The failure to pay the first premium merely established the relation of debtor and creditor between decedent and the company. A great number of cases have determined that payment of the first premium is not essential to render a contract of insurance effective: Nat. Mut. Fire Ins. Co. v. Sprague, 40 Colo. 344, 92 Pac. 227; Cahill v. Royal Ins. Co., 94 Conn. 118, 108 Atl. 544; Marysville Mercantile Co. v. Home Fire Ins. Co., 21 Ida. 377, 121 Pac. 1026; Mutual Life Ins. Co. v. Allen, 212 Ill. 134, 72 N. E. 200; N. Y. Life Ins. Co. v. Greenlee, 42 Ind. App. 82, 84 N. E. 1101; Green v. Star Fire Ins. Co., 190 Mass. 586, 77 N. E. 649; DeMichele v. London & Lancashire F. Ins. Co., 40 Utah 312, 120 Pac. 846. The delivery of a policy without actual payment of the premium raises the presumption that the company has extended credit: Washburn v. U. S. Casualty Co., 108 Me. 429, 81 Atl. 575; Hartwig v. Ætna Life Ins. Co., 164 Wis. 20, 158 N. W. 280. Had this policy remained in the possession of the insured for

the whole year, the company would have had a valid claim against her for the first premium, and no court would deny its right to have recovered the first premium.

In the condition of this record, considering the admissions and the offers of proof, it is my opinion that the court was not in error in entering the judgment that it did.

Mr. Justice SCHAFFER concurred in this dissent.