**RIO GRANDE NAT. LIFE INS. CO. v. FAULKNER.**

No. 14325.

Court of Civil Appeals of Texas. Dallas.

April 27, 1951.

On Rehearing June 8, 1951.

Rehearing Denied July 13, 1951.

Wm. M. Bates, Dallas, for appellant.

Chaney & Davenport, Dallas, for appellee.

BOND, Chief Justice.

The appellee, Mollie L. Faulkner, as plaintiff in the court below, instituted this suit against the appellant, Rio Grande National Life Insurance Company, as defendant, on an insurance policy issued on the life of her husband, Tommie F. Faulkner. The policy of insurance was issued on June 5, 1948 on the written application of the purported insured. Tommie F. Faulkner died as the result of an automobile accident on June 17, 1948. The plaintiff was the named beneficiary in the policy.

The policy, pertinent here, provides: "This policy is issued in consideration of the payment in advance of the monthly premium of Two Dollars and Seventy-three cents for the month beginning on the 5th day of June, 1948, which is the date of this policy * * *. All premiums are due and payable at the Home Office of the Company in the City of Dallas, Texas, but will be accepted elsewhere if paid to a duly authorized collecting agent upon the signature of such agent in the policyholder's premium receipt book or in exchange for the Company's receipt signed by the President, Vice-President, Secretary or Assistant Secretary * * *. This policy shall take effect upon delivery to the insured and payment of the first premium thereon * * *."

█ It will be observed from the recitals in the policy that payment in advance of the first monthly premium is a condition precedent for the policy to become effective. Such condition was mandatory.

█ Art. 4732, sec. 1, Vernon's Ann. Tex.Civ.St., provides: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: 1. That all premiums shall be payable in advance either at the home office of the company or to an agent of the company upon delivery of a receipt signed by one or more of the officers who are designated in the policy." This statutory provision must be read into, if not stated in, every life insurance policy; and the insured and the beneficiary named in the policy were charged with knowledge of this statute.

This case was tried to a jury and on the evidence adduced the defendant filed motion for judgment, and, in the alternative, for instructed verdict in its favor; in due time presented objections to the charge to the jury and motion for judgment notwithstanding the verdict; all of which were overruled. The court then entered judgment for the plaintiff for $2,000, the face of the policy, for $500 attorney fees and $240 statutory penalty. In consequence, and in due time, the defendant filed motion for new trial, assigning errors to the action of the trial court in the premises, which motion was overruled. The defendant duly perfected appeal, presenting here appropriate material points of error, to the extent necessary and sufficient to raise the questions to be determined.

The record evidence is uncontroverted; admittedly true that the first premium or any part of same was never paid. There is no evidence that the policy was delivered or that payment of premium was deferred by the Company, or by an authorized agent of the Company, on credit or otherwise. Also there is no evidence that any receipt for such payment of premium was ever given to the insured, or evidence of payment put into the receipt book as provided in the policy. The only witnesses offered on the questions of delivery of the policy and payment of the premium, and the powers and duties in reference thereto of Mrs. Shortnacy, the agent, were the plaintiff Mollie L. Faulkner and the agent herself. There is no controversy in the record as to whether Mrs. Shortnacy, at the time the policy was left with Mrs. Faulkner, was a soliciting and collectinng agent of the defendant Company; or that her authority was limited by written agreement made March 24, 1948, with the Insurance Company, which agreement reads: "* * That the agent will have no authority on behalf of the Company to make, alter or discharge any policy or annuity contract, to extend the time for paying a premium or consideration, to waive forfeitures, to incur liability on behalf of the Company, to allow the delivery of any policy unless the person proposed be in good health and the first premium paid in full, or to allow the delivery of any annuity contract unless the required consideration is paid in full."

Mrs. Faulkner testified that on Monday, June 14, 1948, Mrs. Shortnacy came to the Faulkner home with the policy in her possession; that the agent turned the policy over to her, demanding the premium; that her husband was away and she told Mrs. Shortnacy she did not have the premium and would not have it until the following Saturday; that she was afraid, and not knowing whether the policy would be good,

she asked the agent whether it would be good then if she had the time on it,—to which inquiry Mrs. Shortnacy answered "Yes," it would be all right if she would pay the premium on Saturday,—that she would be back on Saturday to get the money and the policy would still be good if the premium was paid Saturday, and would be in full effect. Mrs. Faulkner further testified:

"Q. Did you see Mr. Faulkner, your husband, that evening (June 14)? A. Yes, sir.

"Q. Then when was the last time you saw Mr. Faulkner alive? A. About nine o'clock, the 17th of June."

On cross-examination Mrs. Faulkner testified:

"Q. Now, when Mrs. Shortnacy brought the policy there for the purpose of delivering it, you did not pay her the premium, did you, on the policy? A. No, sir. * *

"Q. Didn't you say a moment ago (maybe I am mistaken) that you showed him the policy? A. Not on Tuesday, I forgot it, I showed it to him on Wednesday * * *

"Q. Still, he did not pay the premium on this policy? A. I told him what she told me, that she would be back Saturday for it.

"Q. In other words, you considered she extended you credit until Saturday to pay the premium, is that what you understood? A. Yes, sir.

"Q. You relied on Mrs. Shortnacy's agreement that she would credit you for the payment of the premium? A. Yes, sir.

"Q. Neither then nor at any time did you pay any part of the premium on the policy? A. No, sir."

Mrs. Shortnacy testified substantially as did the plaintiff: That she left two policies, —the one in suit and another on the insured's children—and that the premium on either of them was never paid; that she left the policies for plaintiff's husband to look them over; that she went back later, on two different occasions between the time she left the policies and the time the insured was killed on the following Thursday; that on each occasion plaintiff said she did not have the money; that she (Mrs. Shortnacy) told Mrs. Faulkner that she must realize that "the policy is not worth a copper penny until the first month is paid and marked on the policyholder's receipt book," which she had left with Mrs. Faulkner; that no payment was marked in the book. She further testified that she was not President, Vice-President, Secretary, or Assistant Secretary of the Insurance Company, and had no authority to waive any provision in the policy, limited by her agency contract with the Company.

■ "It is a fundamental rule that every contract must be supported by a consideration. A contract or promise without any consideration is not binding upon the parties, and is unenforceable. * * *." 10 Tex.Jur. 112, sec. 65. The provision of the policy here expressly provides for the payment of the first premium as the consideration for the delivery and effectiveness of the insurance; and the first premium not having been paid to the Insurance Company or to its authorized agent, either before or after the death of the purported insured, the policy never took effect on the mere unauthorized delivery of same. There is no contention that the Insurance Company waived any provision of the policy as to payment of the first premium, or that the Company or any of its officers named in the policy extended credit to the purported insured or the beneficiary in the amount of the first premium, as to carry the policy into effect. If it may be said that the agent, Mrs. Shortnacy, made an agreement to extend the credit and thereby delivered the policy, such would be of no concern to the Insurance Company. Such agreement would be personal as between the agent and the purported insured's beneficiary. The premium thus not having been paid, the policy never became a binding contract between the parties. Ginners' Mut. Underwriters Ass'n v. Fisher, Tex.Com.App., 238 S.W. 207; T. L. Patrick & Son v. Ginners' Mut. Underwriters Ass'n, Tex.Civ.App., 256 S.W. 666; Tyler Mut. Fire Ins. Co. v. Ellington, Tex.Civ.App., 23 S.W.2d 775; Texas Life Ins. Co. v. Mansel, Tex.Civ. App., 105 S.W.2d 899; Kennedy v. Guarantee Mutual Life Co., Tex.Civ.App., 103 S.W.2d 809.

Furthermore, the evidence is uncontroverted that Mrs. Shortnacy made no report to the office of the Insurance Company or to any of its managerial officials that she had left the policy with the Faulkners without collecting the first premium until after she learned of the death of the purported insured. Under such circumstances as revealed in this record it cannot be said that the Company acquiesced in the acts of its soliciting agent as relied upon by the plaintiff to establish liability. The burden of proof was upon the plaintiff to establish the authority of the agent to deliver the policy without payment of the premium, or to extend time for such payment. The plaintiff made no effort to show such authority, but, on the contrary, the evidence is uncontroverted that the agent had no such right. 2 Tex.Jur. 499, sec. 103; Id p. 505, sec. 108; Overton v. First Texas State Ins. Co., Tex.Civ.App., 189 S.W. 514, er. dis.; Texas State Mutual Fire Ins. Co. v. Farmer, Tex.Civ.App., 83 S.W.2d 411, er. dis.; 3 C.J.S., Agency, § 317, page 257.

It is further well established that the payment of a premium is necessary to make a contract effective. 44 C.J.S., Insurance, § 270, page 1075 (text supported by numerous authorities); American Ins. Union v. Lowry, 5 Cir., 62 F.2d 209, certiorari denied, 289 U.S. 745, 53 S.Ct. 689, 77 L.Ed. 1491; Harris v. Travelers Ins. Co., 5 Cir., 80 F.2d 127; Order of Railway Conductors of America v. Quigley, 131 Tex. 4, 111 S.W.2d 698. "The validity of an extension granted by an agent of the creditor depends on the authority vested in him; if he has authority only to collect the debt he cannot extend the time of payment." 32 Tex.Jur. 634, sec. 4.

We have reviewed all points and counter-points of the respective parties relative to liability of the defendant for acts of its collecting agent. The appellant's points are severally sustained. Therefore the judgment of the trial court is reversed and judgment here rendered that appellee take nothing against appellant, and the policy of insurance sued on canceled.

Reversed and rendered.

## On Rehearing.

YOUNG and CRAMER, Justices.

Reference in original opinion to the employment contract of Mrs. Shortnacy (excluded by the trial court) was unnecessary to the points under discussion, the instrument being merely corroborative of the record proper.

It appears without dispute that this lady was no more than a solicitating agent of the company, Art. 5063, Vernon's Ann.Civ.St., providing in part that "such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy." Likewise the policy on its face recites that "This policy shall take effect upon delivery to the insured and payment of the first premium thereon to the Company or its duly authorized agent during the insured's lifetime and sound health."

In the face of the foregoing statute and policy limitations of which the holder had notice, 24 Tex.Jur., sec. 109, p. 810, it cannot be claimed that mere possession of the policy by such an agent is sufficient indicium of actual or even apparent authority for unconditional delivery thereof without payment of premium or extension of credit in such connection. Willis v. Texas Prudential Ins. Co., Tex.Civ.App., 101 S.W.2d 857, writ refused; Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623; Great American Casualty Co. v. Eichelberger, Tex.Civ.App., 37 S.W.2d 1050, writ refused; Donaldson v. National Life & Accident Ins. Co., Tex.Civ.App., 53 S.W.2d 136, syl. 6, writ refused; Texas Prudential Ins. Co. v. Corn, Tex.Civ.App., 205 S.W.2d 78; Commonwealth Life & Accident Ins. Co. v. Nelligan, Tex.Civ.App., 220 S.W.2d 209.

Appellee seeks to apply to the instant record the presumption of lawful delivery arising from the insured's possession of policy; but in Eaton v. New York Life Ins. Co., 315 Pa. 68, 172 A. 121, 95 A.L.R. 462, there were involved neither above quoted provisions of a policy contract, nor statutory enactments comparable to Arts. 4732, secs. 1 and 2, and 5063 of our Insurance Laws.

We concur in above judgment of reversal and rendition.