**RIO GRANDE NAT. LIFE INS. CO. v. BANDY.**

No. 13601.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 15, 1937.

Rehearing Denied Nov. 26, 1937.

Read, Lowrance & Bates, of Dallas, for appellant.

Rogers & Spurlock, of Fort Worth, for appellee.

SPEER, Justice.

This is an appeal by Rio Grande Life Insurance Company from a judgment rendered by the county court at law No. 2, Tarrant county, Tex., in favor of Vera Lucille Bandy in a suit on an insurance policy issued on the life of C. C. Bandy, the deceased husband of appellee.

This action was based on at least three conditions, each alleged to entitle her to a recovery. Briefly stated, they are shown by the pleadings to be:

(1) That appellant, acting through its agent, G. P. Walker, entered into an oral contract of insurance on March 16, 1936, to pay to appellee as beneficiary the sum of $500, if the insured died during the life of the contract; that the insured made a credit arrangement with Walker, the agent, for payment of the agreed premium on March 21, 1936; that the agent obligated the insurer with the insured that the protection should be effective immediately; that the premium was paid on the March 21st, as contracted.

It was further alleged that the agent promptly sent the application to the home office at Dallas. where it was received, approved, and the policy issued on about March 28, 1936, and returned to the agent Walker at Fort Worth with unqualified instructions to deliver it to the insured, but that appellant fraudulently postdated the policy as of March 30, 1936; that the policy was in fact constructively delivered to the insured.

(2) Alternatively, she alleged, if mistaken in the former allegations as to the agent Walker having made a contract binding on appellant, then, on March 17, 1936, the appellant, through Elmer Ratliff, its general manager and superintendent, while acting within the scope and apparent scope of his authority, inspected said application, questioned the insured, and satisfied himself that the insured was a good risk, and then and there "stated and contracted that said application was accepted from that date by the defendant (appellant) and that said policy, in accordance with said contract, would immediately be issued. That on said date the applicant C. C. Bandy was alive and in good health."

(3) There was another alternative plea conditioned that if she be mistaken in the preceding allegations, and if the policy of insurance issued by appellant did not become effective because it was not manually delivered, then, under said oral contracts and agreements, it was bound to issue and deliver same, and, having failed, appellant is liable to appellee in damages for the amount of the policy contracted for because of the breach thereof.

Allegations were made of the death of insured on March 30, 1936, demand for payment, its refusal, and the expiration of thirty days before filing suit. Prayer was for the face of the policy, statutory penalty, and attorneys' fees, all alleged to aggregate $810, and, in the alternative, for the same amount in damages for a breach of the contract.

Appellant presented a general demurrer and several special exceptions to appellee's amended petition, all of which were overruled. The answer consisted of a general denial and special pleas that a policy of insurance for $500 was issued as of March 30, 1936, based on the written application signed by the insured and forwarded to the home office for acceptance or rejection; that the written application was accepted by appellant under the terms contained therein, and the policy issued thereon; that the application for insurance was in writing and executed by the insured on March 16, 1936, and delivered to appellant's soliciting agent, G. P. Walker, at Fort Worth, Tex., for transmission to the home office for acceptance or rejection, and that said soliciting agent had no authority to make any contract with the insured which would bind the appellant, and that by the terms of the written application it was expressly agreed that there should be no liability on the part of appellant until a policy had been issued on the application and manually delivered to the insured and accepted by him while alive and in good health, and the premium thereon had been paid; that if any premium was ever paid thereon it was for 31 cents to cover the first week the policy should be in effect after its date and delivery; that said premium was paid on March 21, while the insured was critically ill, and that he died from said illness on March 30, 1936.

The answer further contained allegations to the effect that the policy issued and dated on March 30, 1936, contained a clause to the effect that no obligation was assumed by the appellant prior to the date of the policy, nor if the insured was not alive and in sound health on the date of the issuance of the policy; that by a further provision in the policy it was agreed that the policy contained the entire contract between the insured and the insurer; that no agent had the authority to

change or alter the terms and provisions of the application upon which the policy was issued. There were special answers that the only authority either Walker or Ratliff had was to receive applications for insurance and submit them to the home office for further attention, and to deliver policies if and when written by the home office and returned to them for that purpose. Allegations were made that appellant had tendered back to appellee the premium paid when the application was taken, and the tender was kept effective throughout the trial.

A replication termed a trial amendment was filed by appellee in response to allegations of appellant as to the written application upon which the policy was issued; we quote the portion of this trial amendment we think pertinent, because a special exception was urged to it and overruled by the court. The allegations were as follows: "That the application purportedly signed by Charles C. Bandy (the insured) marked defendant's exhibit No. 1, herein is not binding upon this plaintiff, for the reason that the insured, Charles C. Bandy, nor the plaintiff herein, neither had an opportunity to read the small printed matter at the bottom, containing an agreement entirely different from that contained in the policy of insurance issued on Charles C. Bandy, and for the further reason that it contained a provision entirely different from that agreed upon by the agent G. P. Walker and Mr. Bandy, and later ratified by Mr. Ratliff, branch manager of the defendant herein, and for the further reason there is no consideration for said agreement for manual delivery of the policy before it shall be effective, and for the further reason that the applicant, Charles Claude Bandy, was not put upon notice of any of the terms contained in small print, and not called to his attention at the time the application was taken." This plea further urges as a defense to the provisions of the application that its terms were not binding on the insured for the reason that after the application had been signed the agent Walker, acting within the scope and apparent scope of his authority, expressly contracted and agreed that said policy of insurance would be in full force and effect immediately, or at least from and after the payment of the first premium installment; that such acts and agreements made by Walker were later ratified by Ratliff; that the application as well also as the provision of a receipt issued by the agent when the premium was paid, containing expressions to the effect that no liability was assumed

until a policy was issued and manually delivered while the insured was alive and in sound health, were void for the reason that they had been procured and issued respectively by "fraud and trickery, and there is mutual mistake of the parties." Prayer to this plea was that the application and receipt, in so far as they contained said provisions, be voided and disregarded by the court.

The appellant filed and urged an exception to this last-mentioned plea upon the ground that there were no allegations of facts which, if true, would show accident, mistake, or fraud in signing said application for insurance; that said allegations were mere conclusions of the pleader. This special exception was urged and overruled by the court.

There was a jury trial on special issues; the verdict was favorable to appellee, and the court rendered judgment in her favor for $772.50; exception was taken and appeal perfected by appellant.

At the conclusion of the testimony, appellant presented a motion for an instructed verdict, this being overruled, the court submitted the case to the jury on special issues; these issues only presented one phase of the case pleaded by appellee and resisted by appellant. The points raised and determined by the issues were: (1) That Elmer Ratliff told C. C. Bandy that the policy in question would become effective on the payment of the premium; (2) that Ratliff's statement above indicated was within the apparent scope of his authority.

Other issues determined that notice and proof of death were timely made, failure by appellant to pay, and the amount of attorneys' fees to be awarded.

It is undisputed that the insured was taken to the hospital on March 21, 1936, and operated for appendicitis, and died on March 30th, following.

■ Appellant brings into its brief eighteen assignments of error, but has not briefed Nos. 5, 6, and 10 to 17, both inclusive, and therefore has waived them, and we are warranted in disregarding them for purposes of determining this appeal. 3 Tex.Jur. p. 838, § 589.

■ Assignments briefed and relied upon by appellant present alleged errors in the overruling of its special exception to the sufficiency of appellee's trial amendment in which it was claimed that the

written application by insured, with its contents and the receipt for the first premium payment, were procured and issued respectively, by fraud, trickery, and mutual mistake. The assignment is further based on exceptions and objections to the introduction of testimony by appellee in support of the plea. Other assignments challenge the actions of the court in refusing to give appellant's requested peremptory instruction; and yet other assignments point out error in submitting the special issues shown to have been given.

The special exception of appellant to the trial amendment should have been sustained. We have quoted above the material parts of the trial amendment in which it was attempted to be alleged that the written application was procured by fraud, trickery, and mutual mistake between the parties. There is nothing in the plea which shows a state of facts, which, if proven, would support the plea. The general allegation that the insured had no opportunity to read that part of the application printed in small type, and that it was not called to his attention at the time he signed it, was not a sufficient allegation, even though proven, to constitute a fraud perpetrated by appellant. Nor can it be said that if for any reason, not brought about by appellant, insured did not familiarize himself with the contents of the instrument he was signing, and was thereby mistaken as to what it contained, there was mutual mistake between the parties, in the absence of further allegations that the instrument was different in terms from what appellant's agent intended for it to contain.

The special exception urged complained of the sufficiency of the trial amendment to allege a state of facts, rather than conclusions, which would authorize the introduction of testimony in support of it. If the written application was to be avoided by appellee, it was incumbent upon her to allege and prove it was procured by fraud, trickery, mutual mistake, or by some similar means. The rules of pleading require specific allegations upon which to base the testimony in such cases, and the special exception was sufficient to point out the defect in the plea. 33 Tex.Jur. p. 582, § 143.

There is no statute nor other rule of law in this state which requires a written application to be made to an insurance company requesting the issuance of a policy, although, as a matter of common knowledge, it is the practice and custom to make the request or application in writing. Appellee contends that her husband contracted orally with one G. P. Walker, an agent of appellant, for a policy of insurance in the sum of $500 on his life. Our courts have recognized and enforced such contracts. Pacific Mutual Ins. Co. v. Shaffer, 30 Tex.Civ.App. 313, 70 S.W. 566 (writ dismissed). In the case last cited, however, the oral agreement for insurance was made with an agent who had the authority from his principal to issue and deliver a policy binding on the company. In the opinion it is said: "Hays [the agent] testified he had full power to insure applicant and issue a policy to him." And again it was said: "The agent in this instance had ample authority to represent the company in effecting the insurance, including the issuance of the policy. He had to refer nothing to the company, and was practically the company itself in dealing with its insurance." In the case before us the undisputed testimony of those in a position to know the nature of the contract between the company and the agents Walker and Ratliff shows that neither of them had authority to pass on applications nor to issue policies of insurance. The strongest circumstance introduced by appellee tending to show either of them could effectuate a contract of insurance consisted in the fact that on Ratliff's office door there was a sign, "Rio Grande Life Insurance Co., E. L. Ratliff, Manager." The testimony shows without contradiction that Ratliff was "Manager" of that office or local agency, and had a joint supervision over the employees there, along with the home office; that all applications for insurance taken through that agency had to be referred to the home office and, if accepted, the insurance policies were issued and sent out from Dallas where the home office was situated. We have been cited to no case in which it was held that a soliciting agent for an insurance company, whose duties were to procure applications and submit them to his company for approval or rejection, and if approved the policy to be issued only by the company, could make a contract of insurance with another binding on the company. The rule validating such oral contracts is frequently recognized in cases involving fire insurance policies, State Mutual Fire Ins. Co. v. Taylor (Tex.Civ.App.) 157 S.W. 950, but it appears that in such cases the agent has

on hand a supply of his principal's policies countersigned and is authorized to write and deliver the contract.

In the instant case, appellee was dependent for recovery upon the oral contract either with Walker or Ratliff. When by appellant's pleadings and proof it became apparent that a written application was made for the insurance by the terms of which it was provided that no liability should be incurred by the company until a policy had been issued on the application, and manually delivered and accepted while the insured was alive and in sound health, the appellee sought to avoid the effect of that application by the trial amendment complained of by the exception.

Appellee could not rely upon both the oral agreement and the written one, for the obvious reason they were different, as to when, if ever, the policy should become effective. Moreover, she could not rely upon both because of the well-recognized rule of law that, where oral negotiations are carried on with knowledge that a subsequent written agreement would be entered into, the presumption arises that all oral agreements have been merged into the written one. There is still a further reason why she could not rely upon oral statements made by the agent and yet depend upon the written application for relief. Article 5063, Rev. Civ.Statutes, provides, among other things, that any person who shall solicit an application for insurance on the life of another shall not have power to waive, change, or alter any of the terms or conditions of the application or policy. The foregoing statutory provision is the law of the state and the insured was chargeable with knowledge of it; its provisions became a part of the contract as fully as if written or spoken into it. The effect of that rule emphasized the importance, to the insured, to know what was in the written application; he must have known, and in law did know, that the agent had no power to waive or change any of the provisions in the instrument he was signing. That application provided that no liability was assumed by the company until a policy had been issued and manually delivered to and accepted by the insured while he was alive and in sound health. This provision was contrary to the contention of appellee that the agent had contracted that the policy should be effective from and after the payment of the first premium.

It is undisputed that a written application was signed by the insured. If the provisions contained in it control appellee's right to recover, she must lose, because no policy was issued thereon and delivered while the insured was alive and in sound health. What we have just said with regard to appellee's right of recovery is not applicable to any right she may have under her alternative plea for damages because of a breach of the contract. It follows then that the trial amendment must have been such as was good against a special exception. For the reasons stated, we think it was not sufficient, and the court erred in refusing to sustain the special exception. The assignment of error raising the question must be sustained.

We do not think the court erred in refusing to give appellant's requested peremptory instruction at the conclusion of the testimony. As we have shown above, there were three theories pleaded by appellee upon which she sought a recovery, and it cannot be said that there was no testimony of some probative force offered to support either theory. This condition would have to exist before an instructed verdict could have been given. The assignments challenging the refusal by the court to instruct a verdict for appellant are overruled.

Other assignments brought forward and supported by bills of exception to the admission of testimony in support of appellee's plea of fraud and mutual mistake are sufficiently disposed of in what we have said relative to appellant's exception to that plea; since in the nature of things appellee will have to amend her pleadings in this respect, the same questions of the introduction of testimony will not arise upon another trial, and it becomes unnecessary for us to further discuss them here.

This case was disposed of by the court and jury, as we have seen, largely upon a determination of the issue of the agent Ratliff's apparent right to make the contract of insurance claimed by appellee. In view of another trial we feel impelled to say that there is a very serious doubt in our minds if there is any substantial testimony in the record to support the verdict as found by the jury on this point. It will be noted the special issue submitted reads: "Do you find from a preponderance of the evidence that Elmer Ratliff told C. C. Bandy that the policy in question would become effective on the payment of the

premium?" This question was answered, "Yes."

The pleadings upon which testimony was introduced and that issue submitted were as follows: "On March 17, 1936, Elmer Ratliff, General Manager and Superintendent of the defendant herein, acting within the scope of his employment, or in the alternative, in the apparent scope of his employment, investigated said application thoroughly and stated and represented that he was satisfied that all the answers contained in said application were true and that applicant was a good insurance risk and further represented, stated and contracted that said application was accepted from that date by the defendant and that said policy in accordance with said contract would immediately be issued."

It will be observed that the most favorable construction of this pleading that can reasonably be placed on it is that Ratliff was talking about the written application previously signed by the insured. It is said in the allegation that Ratliff claimed to have "investigated said application thoroughly and stated and represented that he was satisfied that *all the answers contained in said application were true,*" etc. (Italics ours). It is not charged that Ratliff made any representations at all as to when the policy would become effective, whether upon payment of the premium or otherwise.

A fair narrative statement of the testimony of appellee on the point is as follows: "On about Thursday following (the taking of the application by Walker) Mr. Ratliff came to our house and said he was manager of the Rio Grande Life Insurance Company; that he understood Mr. Walker had taken some applications—'written some insurance on you people, and I wanted to check up on it a little.' We said that is fine and invited him in; my husband asked him if everything was o. k. and he said 'everything is o. k. and you will have your policy in a few days, there is nothing to worry about.' I thought from what he said the policy was in force from that day."

The testimony of Ratliff as to what was said between him and the insured was materially different to what appellee testified, but, to determine the sufficiency of testimony to support an answered issue, the party in whose favor the answer is given is entitled to the most favorable construction to be placed on his testimony that is consistent with the facts. Upon the testimony of appellee the jury found in response to the issue quoted that Ratliff told the insured that the policy in question would become effective on the payment of the premium. Since the case must be reversed for the reasons given under the first assignment of error, it becomes unnecessary for us to pass upon the sufficiency of the evidence to support the issue mentioned, but, as stated above, we are in doubt on the subject.

There are many other interesting points discussed in the respective briefs of the parties, but in the view we take of the appeal as herein expressed no useful purpose could be attained by prolonging this opinion in a discussion of the matters brought out.

For the errors mentioned herein, the judgment of the trial court must be reversed and the cause remanded for another trial.

Reversed and remanded.