## DONALDSON v. NATIONAL LIFE & ACCIDENT INS. CO.

### No. 9763.

Court of Civil Appeals of Texas. Galveston.

July 14, 1932.

Rehearing Denied Sept. 29, 1932.

Strickland & Johnson, Earle M. Manint, and Jno. T. Garrison, all of Houston, for appellant.

John F. Battaile and James F. Lawler, both of Houston, for appellee.

GRAVES, J.

In a general judgment of the trial court, sitting without a jury, no findings of fact or law having been either requested or filed, the appellant as the designated beneficiary of Raymond Williams, deceased, was denied any recovery against the appellee on a $2,000 accident policy it had issued on his life, dated February 26, 1930, the first $1 premium thereon having become due on April 1, 1930, the assured having suffered accidental death by drowning at Orange, Tex., about 11:30 a. m. on April 12, 1930.

From such adverse determination below the beneficiary regularly prosecutes her appeal to this court, contending that the appellee through its authorized representatives, especially its soliciting and collection agent, Mr. Fugett, had waived the failure to pay the first premium referred to on its due date of April 1, 1930, and had extended the time for such payment to the 12th day of April, 1930, when it was made, received, and accepted, with the consequent effect of keeping the policy in force until after the death of the assured, thereby casting liability for the amount of the policy upon it; that, in any event, the acceptance by the insurance company of the payment of such premium on the 12th day of April, which it was claimed had occurred between 9 and 10 o'clock of

that day and prior to the death of the insured, together with the alleged habitual custom and practice of the company in permitting and accepting the payment of such premiums on the policies after their due dates, constituted a waiver of the requirement that this premium be paid upon its due date, and estopped the appellee from claiming that a forfeiture of the policy had occurred at the time of the insured's death.

The pertinent provisions of the policy were as follows:

### "Policy Provisions.

"The National Life & Accident Insurance Company, Nashville, Tennessee, hereinafter called the Company, hereby insured Raymond Williams, hereinafter called the Insured, as herein limited and provided, against loss of life * * * which results solely and without other contributing causes from accidental injury. 'Accidental injury' as used in this policy means bodily injury suffered while this policy is in force. * * *

"The initial death indemnity provided by this policy is Two Thousand Dollars.

### "Losses Covered.

"Sec. A. For loss of life ......: The death indemnity.

### "General Provisions.

"(a) The consideration for the issuance of this policy is the payment of a premium of $1.00, covering the first insurable period. * * *

"(b) The first insurable period hereunder begins at 12 o'clock noon of the date this policy is issued and countersigned (said date being February 26, 1930) and ends at 12 o'clock noon of the 1st day of April, 1930, standard time of the place where the insured resides.

"(c) This policy may be renewed at the option of the Company for periods of one calendar month or any number of calendar months not exceeding twelve, by paying in advance a renewal premium at the rate of $1.00 per calendar month for the renewal period. * * *

"(f) Any failure to comply with the provisions of this policy shall render invalid any claim hereunder.

### "Standard Provisions.

"2. * * * No agent has authority to change this policy or waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon.

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by one of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained."

These contentions cannot be upheld; by the explicit terms of the contract between the parties in the last-quoted paragraph 3 of the policy, as concretely applied here, it was agreed that the acceptance of this overdue premium on April 12th revived or reinstated the policy "only to cover accidental injury thereafter sustained," whereas the conclusive presumption on this appeal is that the drowning of Williams had occurred before the payment had been made or accepted on that same day; this for the reason that both the pleadings and evidence raised that as a fact issue—the appellee having so specifically alleged, with sufficient support to have justified such a finding—hence, in deference to the judgment in its favor, this court must assume that it was so determined below.

If the premium had been paid and accepted by the company before Williams' accidental death, its liability—because of the latitude it allowed its agents in receiving overdue payments—would seem to have become fixed, but, that not having occurred, it is clear that the policy, by its own terms, lapsed as of April 1st, and could have been reinstated by the belated payment made on April 12th, provided he was still alive, and then "only to cover accidental injury thereafter sustained." We can read no other meaning into the contract, and that the parties to it had the right to so stipulate the beginning, ending, and conditions attending the risk they were dealing with, goes without saying. 32 C. J. 1164, § 277; 1 C. J. 409, § 21; Matthews v. Continental Casualty Co., 78 Ark. 81, 93 S. W. 55; Raynor v. Nat. Casualty Co., 125 Misc. 174, 210 N. Y. S. 586; Balch v. Fed. Life Ins. Co., 116 Kan. 560, 227 P. 326; Equitable Life Assur. Soc. v. Ellis (Tex. Civ. App.) 137 S. W. 184, 105 Tex. 526, 147 S. W. 1152; Hatton v. Mut. Health & Acc. Ass'n (Tex. Civ. App.) 10 S. W.(2d) 239; Duncan v. United Mutual Fire Ins. Co., 113 Tex. 305, 254 S. W. 1101.

The agent of the insurance company, whose acts in this instance in deferring it until that date and then collecting the 12-day past-due premium on April 12th are relied upon as having kept the policy in force, by the uncontroverted evidence, only had authority from it to solicit applications, forward and deliver policies, and collect premiums—not to either make contracts for or waive any of the stipulated provisions in the applications of policies themselves on behalf of the company; wherefore, not only did such acts on his part not have the effect of overriding the copied provision in the policy sued on that no agent had any authority to change or waive any of its provisions, but the appellant herself was, by virtue of these recita-

tions, charged with notice of the limitations thereby imposed upon him. Revised Statutes, art. 5063; Southern Surety Co. v. Benton (Tex. Com. App.) 280 S. W. 551; Columbian National Fire Ins. Co. v. Dixie Co-op. (Tex. Civ. App.) 261 S. W. 174.

While, as above stated, it must thus be considered that the payment on April 12th was made after Williams' death earlier on that day, there is no evidence that either the appellee, or its agent receiving it, then knew that he was dead, and the appellant herself testified that she had not been advised of the happening until the following day, April 13th.

In the circumstances as a whole, this view of the cause—as expressed in their brief by the able counsel for the appellee—is quoted with approval: "The insured met an accidental death during a period in which his policy of insurance was inoperative and ineffective. Whether the payment of the premium by the beneficiary on April 12th, after insured's death, was with knowledge of his death at the time, is immaterial. The policy contract was plain and unambiguous. It was a policy from month to month. By its terms failure to pay a premium of renewal on the first of the month suspended the contract entirely. It could be renewed at any time by paying the monthly premium, but only to cover accidents subsequently arising. That is the plain context of the agreement. It was renewed on April 12th, but the subject-matter of the risk was already dead. The mere statement of the agent, after two unsuccessful attempts to collect this premium (on April 1st and April 8th), that he would possibly be around the latter part of the week of April 7th did not constitute an agreement extending the insurance until that date, and the trial court so found. Such statement did not evidence a waiver of the provisions of the policy excluding protection under it during a period of default, nor does it estop the Company from standing on the terms of its agreement. The limitation upon the agent's authority was clearly set forth in the contract and the receipt-book offered in evidence. Under the authorities cited, the appellant was charged with knowledge of their existence and the limitations there expressed."

 Neither is there merit in the final claim, we think, that the appellee was estopped from asserting any breach of warranty under the policy by reason of the statement of its agent, Mr. Henry, to her that, if she would get the inquest proceedings on Williams' death, he would pay her claim under the policy, which she testified she had done; in the first place, there was no declaration of a cause of action upon such a claim of estoppel in the pleadings, and, if there had

been, the evidence to support it was lacking, in that here, too, the appellant was charged with notice on the face of the contract that the agent had no such authority.

Pursuant to the views expressed, the trial court's judgment will be affirmed.

Affirmed.