### INDIANAPOLIS LIFE INS. CO. v. POWELL.

No. 12093.

Court of Civil Appeals of Texas. Dallas.
March 27, 1937.

Rehearing Denied April 24, 1937.

158

Malone, Lipscomb, White & Seay, of Dallas, for appellant.

Landman & Landman, of Athens, for appellee.

BOND, Justice.

On May 11, 1931, the appellant, Indianapolis Life Insurance Company, issued to Victor H. Powell two policies of life insurance, one in the sum of $1,500 and the other in the sum of $1,000. The policies were made payable, on proof of death, to his wife, Billie Powell. The pertinent provisions of the policies, material here, are:

"Beginning not later than the end of the second Policy year, and annually thereafter, this Policy, while in force, will be credited with a dividend from the surplus as apportioned by the Board of Directors of the Company. Unless the Insured shall elect otherwise in writing, the dividend shall be applied in accordance with option—4—below.

"Option 4. Left to accumulate to the credit of the Policy at three and one-half per centum compound interest per annum, together with such share of surplus interest as may be allotted by the Board of Directors, and payable at the maturity (by death or otherwise) of the Policy by withdrawal in cash, on demand by the Insured.

"Premiums.—1. This policy is based upon the payment of premiums annually in advance, and same are payable at the Home Office of the Company in the City of Indianapolis, or to any agent of the Company upon delivery, on or before date due, of a receipt signed by the President, Vice-President, or Secretary, and counter-signed by said agent.

"2. On written request, the mode of premium payment may be changed, on any anniversary of the Policy, from annual to semi-annual or quarterly, or vice versa, and under any such change the premium shall be in accordance with the Company's published rates.

"3. In case any premium is not paid when due according to the terms of this contract, then this Policy shall cease and determine and all premiums previously paid shall be forfeited to the Company, except as otherwise herein expressly provided. Except as herein provided, the payment of a premium or installment thereof shall not maintain the Policy in force beyond the date when the next premium or installment thereof is payable. No premium shall be construed as paid, either wholly or in part, by reason of dividends remaining with the Company under Fourth Dividend Option.

"Modifications, etc.—No person, except the President, Vice-President or Secretary at its Home Office in Indianapolis, has power on behalf of the Company to make, modify or alter this Policy, to extend the time for paying a premium, to bind the Company by making any promise or by accepting any representation or information not contained in the written application for this Policy. Any interlineations, additions or erasures must be attested by the signature of one of the above named officers."

The premiums for the first policy year on both policies were paid to the insurance company. At the beginning of the second year, there was apportioned by the board of directors of the company a dividend of $4.63 on the $1,500 policy and $3.26 on the $1,000 policy, and, according to appellee's contention, before either of the policies lapsed for nonpayment of the second annual premium, the policy of $1,000 was canceled and the dividends due to the insured on both policies were applied toward payment of the premium for the policy year of 1932 on the $1,500 policy, and the balance was paid along during the year to carry the $1,500 policy through to the death of the insured. The insured died on December 24, 1932.

The appellee, as beneficiary under the policies, instituted this suit against the Indianapolis Life Insurance Company, to recover the face of the $1,500 policy, with interest, penalty, and attorney's fees, alleging all necessary elements for such recovery and also alleged waiver and estoppel by the company of the above policy provisions. The insurance company answered by general denial and specially alleged that the policy had lapsed for nonpayment of the second annual premium, and that no extended time for the payment of the premium was ever made by the company or any authorized agent, and further alleged the special provisions above quoted in bar of appellee's recovery.

The cause was submitted to a jury on special issues, and the jury found, in effect: (1) That S. Y. Matthews & Son was the general agent of the Indianapolis Life Insurance Company from May 11, 1931, to December 24, 1932, and had authority to manage the business of the Indianapolis Life Insurance Company with reference to the policies in suit; (2) that Jerry Werthheimer was connected with the office of S. Y. Matthews & Son in such a way as to cause plaintiff or any one similarly situated to seek his advice on life insurance matters pertaining to policies with Indianapolis Life Insurance Company, and had authority to arrange with plaintiff to drop one policy of life insurance, carry the other policy, and arrange for the application of accrued dividends on both policies be applied on the $1,500 policy premium and rearrange the mode of payment of the balance of the

premium; (3) that $4.63 had accrued as a dividend on the policy of $1,500, and $3.26 had accrued as a dividend on the policy for $1,000, and that the plaintiff directed such dividends to be applied on the second year premium of the $1,500 policy, and that Jerry Werthheimer agreed with the plaintiff that such dividends would be so applied, and arranged with plaintiff for the payment of the second year premium in less than one annual payment; (4) that on or about May 23, 1932, plaintiff paid $3 on the second year premium of the $1,500 policy and also $3 on or about May 31, 1932; and (5) that $500 was a reasonable attorney's fee.

Based upon the findings of the jury, the court entered judgment in favor of appellee and against appellant for the sum of $2,180, from which this appeal is prosecuted.

 It is well settled in this state that forfeitures of insurance policies are not favored in law or equity, because a forfeiture is a harsh remedy, punitive in its operation and ought not to be declared and enforced, if it can be avoided. 19 Tex.Jur. pp. 799, 800, § 4. And, to accomplish that end, all provisions in insurance contracts, like unto any other contract not inhibited by law, may be waived to carry out the true purposes of the insurance. Indeed, the terms of the policies before us clearly express that dividends apportioned by the board of directors of the company are payable to the insured, on demand, in cash, and unless a written demand otherwise, the dividends shall remain on deposit with the company, at interest, while the policy remained in force, becoming payable upon the discontinuance of the policy; and that the annual premiums on the policies are payable in advance, unless the mode of payment be changed on written request, and under terms prescribed by the policies.

 The two dividends in the hands of the insurance company belonged to the insured, and in the absence of an agreement otherwise, such dividends were payable to the insured and could not be applied by the company to extend the policies; and the premiums are payable as provided therein. But, if there is any substantial evidence in the record to sustain the findings of the jury that such provisions were waived, it is the duty of the courts to sustain the verdict of the jury.

The appellant is a foreign corporation, with home office in Indianapolis, Ind., with permit to do business in Texas, and having as its agent in Texas, S. Y. Matthews & Son, to whom the home office addressed all communications as its "manager." S. Y. Matthews & Son maintained their office at 1325 Kirby building, Dallas, Tex., and on their office door was printed the words "S. Y. Matthews & Son, General Agents, Indianapolis Life Insurance Company," and in this office, the Indianapolis Life Insurance Company had employed a cashier, a Mrs. Small, who gave testimony that she had been in the office and in the employ of the Indianapolis Life Insurance Company for fifteen or sixteen years; that S. Y. Matthews & Son was the general agent of the Indianapolis Life Insurance Company, representing it in North Texas; that Jerry Werthheimer, for six or seven years, had maintained his office with S. Y. Matthews & Son; and that she received instructions from him relative to policies of the company, and transmitted such instructions to the home office of the company. She further testified that Mr. Werthheimer was a representative of the Indianapolis Life Insurance Company; that he writes and takes applications for insurance, collects premiums for and remits direct to the Indianapolis Life Insurance Company; and that he "works with the beneficiary, when the insured dies, in getting the papers properly executed." The record reveals that, on June 27, 1932, the home office of the insurance company addressed a letter to the insured, in reference to a reinstatement of the $1,000 policy, and on a copy of said letter in the company's possession was written the words, "Matthews (Werthheimer). Dear Mr. Werthheimer: Please report on this case at once."

Furthermore, the record shows that the home office of the insurance company sent direct to the insured notices of due date of the second year premiums on the two policies in question, in which is stated that "on or before due date, payment must be made to the Indianapolis Life Insurance Company or S. Y. Matthews & Son, Mgrs., 1325 Kirby Building, Dallas, Texas"; and, thereafter, the insured received letters from Matthews & Son, reciting that "we will be glad to arrange it so you can pay (premiums) quarterly—or monthly—as you please. And you may deduct $4.63 from the premium."

 We think, under the related facts, that the verdict of the jury finds ample sup-

port in the record that S. Y. Matthews & Son and Jerry Werthheimer were agents of the Indianapolis Life Insurance Company, with authority to waive the provisions of the policy in reference to the extension and payment of premiums, and the application of dividends.

Appellee's testimony disclosed that, before the second year premium was due, she went to the office of S. Y. Matthews & Son and interviewed Mr. Werthheimer in reference to her husband's policies with the insurance company, prompted in going by her husband being sick, out of work, and financially unable to carry the policies. And, in that interview, she and Werthheimer mutually agreed that the $1,000 policy be dropped, that the dividend of $4.63 then due to the insured on the $1,500 policy, and the dividend of $3.26 then due to the insured on the $1,000 policy, be applied to the annual premium of the $1,500 policy, and the balance of the premium be paid "as best she could" to avoid forfeiture. On May 23, 1932, appellee testified that she paid to a Mrs. Andrews, collector for Mr. Werthheimer, $3, and on May 31, 1932, paid to Mr. Werthheimer in person, another $3, which payments were directed to be applied to the balance of the premium due on the $1,500 policy. Mr. Werthheimer testified that he received the two payments, but applied them to a personal obligation due to himself, of Victor H. Powell.

■ Appellant's testimony sharply contradicts that of appellee, thus presenting, we think, issues determinable by the court or jury, and the verdict of the jury being in favor of appellee, we see no reason to disturb such findings.

Thus, it appears, after appropriating the $4.63 premium on the $1,500 policy and the $3.26 premium on the $1,000 policy, with the two $3 cash payments made by appellee, if applied as partial payment of the annual premiums of $18.36 on the $1,500 policy, under the arrangement above set out, the premium paid would have, and we think did, carry the $1,500 policy beyond December 24, 1932, the date of death of the insured.

■ Appellant had the two dividends belonging to the insured in its hands, and it was its duty to credit that money and the cash payments on the premium due, under the direction or notice. by appellee, who transacted her husband's business in reference to its payment, he being in bad health and unable to attend to it himself; there-

fore, appellant will not be permitted to forfeit the policy because of its own failure, or the failure of its duly authorized agent, acting within the scope of his employment, to apply the payments, where the circumstances are such as to show that the parties desired to continue the $1,500 policy, and the compensation was directed to be applied to the premium. The company will not be heard to say that it failed to do that which ought to have been done, and forfeit the policy. Illinois Bankers Life Assurance Co. v. Payne (Tex.Civ.App.) 93 S.W.(2d) 576.

■ In the case of Mrs. E. A. Timmerman et al. v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W.(2d) 687, 690, Judge Leddy, speaking for the Supreme Court, said: "The rule seems to be well established that a life insurance company will not be permitted to insist that a policy has been forfeited for nonpayment of premium if at the time such premium becomes due it has in its possession dividends presently payable belonging to the insured which are sufficient to discharge the premium at its maturity." While it may be true that, in the absence of an agreement, the insurance company was under no obligation to apply the dividends, change, alter, or amend the mode of payment of premiums as provided by the policy, yet, where the agreement was made, the company is estopped to claim that the premium was not paid in the manner set out in the insurance contracts. Insurance contracts are not so inflexible as not to admit such change by the parties, or by authorized agents, acting within the scope of their authority and employment.

In the case of Wichita Home Ins. Co. v. Montgomery, 4 S.W.(2d) 1041, 1045, the Amarillo Court of Civil Appeals (writ of error refused) said: "If an insurance company or its authorized agent, by its habit of business, or by its acts or declarations, or by a custom to receive overdue premiums without objection, or by a custom not to exact prompt payment of the same, or, in brief, by any course of conduct, has induced an honest belief in the mind of the policy holder, which is reasonably founded, that strict ,compliance with a stipulation for punctual payment of premiums will not be insisted upon, but that the payment may be delayed without a forfeiture resulting therefrom, it will be deemed to have waived the right to claim the forfeiture, or it will be estopped from enforcing the same, although the policy expressly provides for forfeiture for non-

162

payment of premiums as stipulated, and even though it is also conditioned that agents cannot waive forfeitures, and even though the policy provides that receiving overdue premiums is merely an act of courtesy." See, also, American Nat. Ins. Co. v. Cleveland et al., 126 Tex. 189, 86 S.W.(2d) 217, and authorities therein cited.

In submitting the issues to the jury, the trial court directed that it find whether or not S. Y. Matthews & Son and Jerry Werthheimer were agents of Indianapolis Life Insurance Company, and acted in such way "as to cause plaintiff or anyone similarly situated to seek their advice on life insurance matters pertaining to policies with Indianapolis Life Insurance Company," and had authority to enter into the arrangement with plaintiff for the payment of premiums. In connection with these issues, the court instructed the jury: "That any person is an agent of an insurance company who (a) takes or transmits, other than for himself, any application for insurance or any policy of insurance other than for himself to or from such company, or (b) who advertises or otherwise gives notice that he will receive or transmit any application for insurance or any policy of insurance other than for himself, to or from such company. Or (c) who shall receive or deliver a policy of insurance of such company, other than for himself. Or (d) who shall examine or inspect any risk, or receive or collect, or transmit any premium of insurance other than for himself. Or (e) make or forward any diagram of any building or buildings. Or (f) does or performs any other act or thing in the making or consummating of any contract of insurance for or with such company, other than for himself. Or (g) who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company. Whether any of such acts shall be done at the instance or request, or by the employment of such insurance company or of, or by any broker or other person. In connection with the foregoing you are charged that a general agent is anyone who has supervision over other agents of such company in a certain defined district. You are charged that any act of arbitration by any citizen who shall arbitrate in the adjustment of losses between the insurers and the insured does not constitute one an agent and neither does the acts of a practicing attorney, acting in the regular transaction of his business as such attorney constitute such an attorney an agent of such company."

 The charge quoted is an explanation and definition of agency, extent of such agency, and acts done within the scope of the agent's employment, on which insurance companies might be liable. Where a case is submitted on special issues, definitions and explanations of legal terms are necessary and often indispensable to enlighten and enable the jury to correctly determine the issues involved. The issues in this case, as to whether S. Y. Matthews & Son and Jerry Werthheimer were agents of appellant, and their acts and omissions binding on the company, were sharp conflicting issues, thus, we think, the court was justified in defining the terms, and such instructions do not offend the rule prohibiting the giving of general charges, where a case is submitted on special issues.

 Appellant challenges the definition given in the special instruction as being more onerous than the facts and circumstances in the case justify, and not a correct definition of agency as applied to insurance companies. The instruction substantially follows the statute (article 5056, R.S.), and while there is much in the definition that finds no application to the facts in this case, yet the objectionable features are not calculated to mislead or confuse the jury, or prejudice appellant, thus, may well be treated as surplusage. We overrule the assignment.

 Another assignment is directed to appellee's recovery of statutory penalty and attorney's fees, based upon the lack of notice and demand to the insurance company for payment of the face of the policy prior to the institution of the suit, as required by article 4736, R.C.S. (as amended by Acts 1931, c. 91, § 1 [Vernon's Ann.Civ.St. art. 4736]), which holds insurance companies liable for penalty and attorney's fees upon the failure to pay within thirty days after demand before suit. The suit itself is not such demand as contemplated by the statute, but where the petition alleges that a demand was made by the policyholder for payment and refused, and such allegations are not specifically denied by the defendant, but, on the contrary, seeks to avoid liability because of lapse of the policy, the presumption stands in favor of the allegations that notice and demand were made as alleged. Especially

does the presumption prevail when the insurance company denies liability in answer to the policyholder's petition and refuses payment of the face of the policy on the ground that the policy was forfeited for nonpayment of premiums. We think under the facts and circumstances of this case that appellant is liable for the penalty and the reasonable attorney's fees as alleged and found by the jury. We also overrule this assignment.

We have carefully examined all assignments and finding no reversible error, it follows that, in our opinion, the judgment of the lower court should in all things be affirmed, and it is so ordered.

Affirmed.