INDIANAPOLIS LIFE INSURANCE COMPANY V. MRS. BILLIE POWELL.

No. 7288.  Decided April 19, 1939.
Rehearing overruled July 26, 1939.
(127 S. W., 2d Series, 172.)

*George E. Seay*, and *Malone, Lipscomb, White & Seay*, all of Dallas, for plaintiff in error.

Since the plaintiff wholly failed to prove any demand for payment on the part of defendant, it was error for the Court of Civil Appeals to hold that a presumption stood in favor of the allegation of a demand, such allegation not being specifically denied by defendant, and that plaintiff was entitled to recover penalty and attorney's fees under Article 4736, R. S. 1925, as amended in 1931, 42nd Leg., even in the absence of a proof of demand. American Natl. Ins. Co. v. Park, 55 S. W. (2d) 1089; Equitable Life Ins. Co. v. Ellis, 105 Texas 526, 147 S. W. 1152; First Texas Prudential Ins. Co. v. Long, 46 S. W. (2d) 297.

*Landman & Landman*, of Athens, for defendant in error.

On the question of whether a demand was made. Washington Fidelity Natl. Ins. Co. v. Williams, 49 S. W. (2d) 1093; National Life Ins. Co. v. Moulton, 113 Texas 224, 252 S. W. 1040.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted by the defendant in error, Mrs. Billie Powell, against the plaintiff in error, Indianapolis Life Insurance Company, which will be called the "Insurance Company." The suit is founded on a life insurance policy for the sum of $1500 issued by the Insurance Company to Victor H. Powell on May 11, 1931. Mrs. Powell is the widow of the insured, Victor H. Powell, and is the beneficiary named in said policy. The insured died on December 24, 1932. The case was tried before a jury, on special issues, resulting in a judgment in favor of Mrs. Powell. The Insurance Company appealed and the Court of Civil Appeals affirmed the judgment of the trial court. 104 S. W. (2d) 157. The Insurance Company has been granted the writ of error.

The vital question in the case is raised by the contention of the Insurance Company to the effect that the testimony contained in the record shows conclusively that no part of the annual premium installment of $18.36 which fell due on May 11, 1932, was ever paid and therefore the policy sued on was not in force in December, 1932, when the insured died. Mrs.

Powell claims that, by virtue of an oral agreement which she had with Jerry Werthheimer, an agent of the Insurance Company, on or about May 11, 1932, which agreement will be hereinafter stated, the policy remained in full force until her husband died. The question in dispute goes primarily to the authority of Werthheimer to bind the Insurance Company by such agreement. Werthheimer was the soliciting agent of the Insurance Company, and had been for several years. The relevant terms of the agency contract between the Insurance Company, called party of the first part, and Werthheimer, as party of the second part, read as follows: "First: That party of the first part hereby employs said second party as Special Agent within the following territory, towit: Dallas and vicinity, subject to the terms and conditions hereinafter provided. Second: Said second party under said employment shall have authority to solicit applications for life insurance, and forward same to the Company for approval or disapproval; and to collect at the time of taking said applications, or upon delivery of policies, first year premiums, and such other premiums as he may be authorized to collect when furnished with regular official receipts of the Company for such other premiums. Party of second part agrees to comply with all instructions which may be given him from time to time, by the party of the first part, and to remit promptly to party of said first part, all premiums, when collected, less the regular commissions herein allowed. * * * Third. It is understood and agreed that all premiums payable under policies issued by said first party must be paid in cash when the premium becomes due, provided that as between said second party and said party of the first part all premiums shall become due within sixty days after the issue of the policy, and that no note or promise to pay will be accepted by the Company in payment or in part payment of any premium. * * *"

In pursuance of this agency contract, Werthheimer, on or about May 11, 1931, procured the applications of Victor H. Powell for two life insurance policies: one for $1500, being the one sued on, and the other for $1000. Both applications were duly forwarded to the Insurance Company, and the two policies were issued by the Company, as of date May 11, 1931, and forwarded to Werthheimer for delivery. The annual premium installments on the $1500 policy were $18.36 each and those on the $1000 policy were $30.91 each,—payable in advance. Werthheimer duly delivered both policies to Powell and took a note, executed by the latter, for the amount of the first year's premium on each of the policies. Each of the two

notes was payable to Werthheimer, personally, and were to be paid in specified monthly installments. Werthheimer, in due time, paid to the Insurance Company the amount of these premium installments, in cash, less the amount of his commissions. The relevant provisions contained in each of the policies read as follows:

"Beginning not later than the end of the second Policy year, and annually thereafter, this Policy, while in force, will be credited with a dividend from the surplus as apportioned by the Board of Directors of the Company. Unless the Insured shall elect otherwise in writing, the dividend shall be applied in accordance with option—4—below.

"Option 4. Left to accumulate to the credit of the Policy at three and one-half per centum compound interest per annum, together with such share of surplus interest as may be alloted by the Board of Directors, and payable at the maturity (by death or otherwise) of the Policy by withdrawal in cash, on demand by the Insured.

"Premiums.—1. This policy is based upon the payment of premiums annually in advance, and same are payable at the Home Office of the Company in the City of Indianapolis, or to any agent of the Company upon delivery, on or before date due, of a receipt signed by the President, Vice-President, or Secretary, and countersigned by said agent.

"2. On written request, the mode of premium payment may be changed, on any anniversary of the Policy, from annual to semi-annual or quarterly, or vice versa, and under any such change the premium shall be in accordance with the Company's published rates.

"3. In case any premium is not paid when due according to the term of this contract, then this Policy shall cease and determine and all premiums previously paid shall be forfeited to the Company, except as otherwise herein expressly provided. Except as herein provided, the payment of a premium or installment thereof shall not maintain the Policy in force beyond the date when the next premium or installment thereof is payable. No premium shall be construed as paid either wholly or in part, by reason of dividends remaining with the Company under Fourth Dividend Option.

"Modifications, etc.—No person, except the President, Vice-President or Secretary at its Home Office in Indianapolis, has power on behalf of the Company to make, modify or alter this Policy, to extend the time for paying a premium, to bind the Company by making any promise or by accepting any representation or information not contained in the written appli-

cation for this Policy. Any interlineations, additions or erasures must be attested by the signature of one of the above named officers."

S. Y. Matthews & Son were the general agents of the Insurance Company in the territory including Dallas County and other surrounding counties. The office of said firm was located in the Kirby Building in Dallas, and had been for many years. Werthheimer had a desk in said office which he used in connection with his duties as soliciting agent for the Insurance Company. He was not an employee or a member of the firm of Matthews & Son. Mrs. Powell testified that Werthheimer informed her, in May 1931, in connection with the transaction involving the application for the issuance of the two policies mentioned, that he was soliciting agent for the Indianapolis Life Insurance Company which had an office in the Kirby Building in Dallas. On April 22, 1932, the Insurance Company mailed from its home office in Indianapolis two notices to the insured. By one, the insured was notified that an annual premium installment, amounting to $18.36, on the $1500 policy, would fall due on May 11, 1932, and that a dividend amounting to $4.63 would accrue under the policy on that date. By the other notice, the insured was notified that an annual premium installment, amounting to $30.91, on the $1000 policy, would fall due on May 11, 1932, and that a dividend amounting to $3.26 would accrue under said policy on said date. In each of said notices, it was stated that the premium installment was to be paid on or before the last mentioned date to the "Indianapolis Life Insurance Co., or to S. Y. Matthews & Son, Mgrs., 1325 Kirby Bldg., Dallas, Texas." In due time these notices were received by the insured. On or about May 11, 1932, Mrs. Powell went to the office of S. Y. Matthews & Son, in the Kirby Building, for the specific purpose of consulting with Werthheimer in respect to the premium installments which were due on the two policies. According to her testimony, the following transaction between her and Werthheimer took place. She explained to Werthheimer that her husband was in bad health and was without means to meet the premium installments which were due, and that she wanted to make some sort of arrangement by which the time for payment of the said premiums would be extended so she could pay them. Werthheimer called her attention to the fact that a dividend amounting to $4.63 was accrued on the $1500 policy and another dividend amounting to $3.26 was accrued on the other policy. He advised her to let the $1000 policy drop and to apply both dividends as a partial payment of the $18.36 premium install-

ment due on the $1500 policy and to pay the remainder of said premium installment "as she could." Mrs. Powell accepted this advice and she and Werthheimer thereupon made an oral agreement accordingly. In pursuance of this oral agreement, Mrs. Powell paid to Werthheimer, on May 23, 1932, the sum of $3.00, and on May 31, 1932, she paid him another sum of $3.00. Werthheimer, without her knowledge or consent, applied these two payments as credits on the notes due him, individually, which Victor H. Powell had executed to him in May, 1931. These two payments of $3.00 each, together with the two dividends of $4.63 and $3.26, if same had been applied in accordance with the said agreement, would have been of sufficient amount to keep the $1500 policy alive until Victor H. Powell died in December, 1932.

On June 11, 1932, S. Y. Matthews & Son wrote Powell the following letter regarding said two policies:

."June 11, 1932

"Mr. Victor H. Powell,
2934 Alabama St.,
Dallas, Texas.
Dear Mr. Powell:

."It is to your distinct advantage to call by our office and make arrangements for premiums on your insurance policies. If it is not convenient to take care of premiums now due, we will be glad to arrange it so you can pay quarterly—or monthly—as you prefer.

"These policies represent a total of $2,500 protection to your wife at a very low net cost.—Do not let it lapse and forfeit the premium already paid, and this insurance which you have at a younger age than you can ever get insurance again.

Very truly yours,
S. Y. MATTHEWS & SON,
By S. Y. Matthews.

Policies No. 101189, No. 101190
Premiums—$18.36—and $30.91
Dividends   4.63—   3.26 (may be deducted from premiums)"

Mrs. Powell testified that this letter was duly received, but that never at any time was any response made thereto, for the reason that she had already made said agreement with Werthheimer and had paid him the sum of $6.00 as heretofore stated. It thus conclusively appears that both the insured and Mrs. Powell were put on notice that the arrangement which Mrs. Powell and Werthheimer agreed upon had not been effected.

■ The undisputed testimony shows that the annual premium installment which fell due May 11, 1932, on the $1500 policy, was never paid. It follows, therefore, that the policy lapsed in accordance with the terms of the policy, because of such non-payment, and was not in force when the insured died, unless the agreement made between Werthheimer and Mrs. Powell on or about May 11, 1932, had effect in some way to prevent the lapse of the policy according to its terms. In this connection, the undisputed evidence excludes any reasonable inference that Werthheimer had any authority to act in behalf of the Insurance Company except in respects specified in his employment contract, the material provisions of which have already been stated. His relation to the Insurance Company was merely that of soliciting agent with no other authority except that which is commonly understood as appertaining to that status. His authority did not comprehend the making of any contract in behalf of the Company, or the waiving of the terms of the policy concerning the payment of the premium installment which fell due May 11, 1932, or the disposition of dividends. In a word, his relation to the Insurance Company falls squarely within the purview of Article 5063 of the Revised Statutes which reads as follows:

"Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

■ Mrs. Powell, in conducting the negotiations with Werthheimer looking to the varying of the terms of the policy, was acting as agent for the insured and therefore was charged with notice of the terms of this statute, as well as of the pertinent provisions expressed in the policy. Besides this, she had previously been informed by Werthheimer that his relation to the Insurance Company was that of soliciting agent. In these circumstances she had no right to rely on the agreement made by Werthheimer as binding the Insurance Company in any respect. American Natl. Ins. Co. v. Huey, 66 S. W. (2d) 690; Bankers Lloyds v. Montgomery, 60 S. W. (2d) 201; Donaldson v. National Life & Acc. Ins. Co., 53 S. W. (2d) 136 (Writ ref.); Willis v. Texas Prudential Ins. Co., 101 S. W. (2d) 857 (Writ ref.); Texas State Fire Ins. Co. v. Richbourg,

257 S. W. 1089; Sanchez v. American Natl. Ins. Co., 40 S. W. (2d) 240; Beaty v. Southland Life Ins. Co., 28 S. W. (2d) 895.

In the interest of clarity, it may be well to add that the record discloses no act of the Insurance Company, either through S. Y. Matthews & Son or otherwise, which implies a ratification of the agreement made by Werthheimer or which furnishes a basis for an estoppel against the Insurance Company.

The judgment of the trial court and that of the Court of Civil Appeals both are reversed, and judgment is here rendered for the plaintiff in error.

Opinion adopted by the Supreme Court April 19, 1939.

Rehearing overruled July 26, 1939.