## MORRIS ASS'N OF BROWNWOOD, TEX., v. TATUM.

### No. 2140.

Court of Civil Appeals of Texas. Eastland.

May 9, 1941.

Rehearing Denied June 6, 1941.

David J. Morris, of Brownwood, for appellant.

Y. W. Holmes, of Comanche, for appellee.

LESLIE, Chief Justice.

Mrs. W. L. Tatum instituted this suit against The Morris Association of Brownwood, Texas, to recover on an insurance policy upon the life of her husband. The defendant entered a general denial and specially denied that the deceased was in good health at the date of application for and issuance of the policy. A trial was had before the court and jury, and, upon the answers of the latter to many special issues, the trial court entered judgment in favor of the plaintiff. The defendant appeals, predicating error on the ruling of the trial court in refusing it a peremptory instruction.

The defendant is a so-called local mutual aid association organized under Art. 4875a—1 et seq., Vernon's Annotated Civil Statutes. It insures its members upon written applications only by some member of a family or group, without medical examination, and without seeing those included in the application and in reliance solely on the answers given in the application, etc.

Here, the Association defends on the ground that Mrs. Tatum made false answers in the application for insurance when she stated (1) that her husband was in good health at the time of the application and issuance of insurance certificate, and (2) that he had not been treated for any illness in the past two years by a doctor. The defendant insists that during such time doctors had given Tatum several X-ray treatments, etc., for cancer, and that he was not in good health and free from disease at time of application and issuance of insurance certificate.

The defendant further insists that by the application and policy Mrs. Tatum warranted the answers in the application which she filed and that by the same she made good health and freedom from disease at such time conditions precedent to any liability by the defendant upon the policy.

The application for and certificate of insurance were both dated August 27, 1938.

Mrs. Tatum's application, made part of the defendant's answer, contained the following:

"I, the undersigned, hereby apply for a Policy of Insurance in the Morris Association of Brownwood, Texas, for Applicant * * * named below: W. L. Tatum. Questions to be Answered Fully by the Undersigned. * * * Is Each Applicant at this time in Good Health? Yes. Has either applicant in the past two years suffered from any ailment for which he or she was treated by a physician? No. If so, give each applicant's name so treated, and state nature of Illness.————Give name of Physician treating such applicant.————— * * * I hereby state that I know the contents of this application, and the answers given by me are recorded precisely as given by me, and that I have signed same personally, and if said answers are found to be false in any respect, I hereby forfeit any policy issued to me, and authorize the Association to cancel same. If the answers to above questions, are, with respect to any applicant named above, in any particular false or untrue, the said Morris Association, of Brownwood, Texas, is hereby authorized to declare any such policy null and void, and to cancel the same.

"It is hereby provided and mutually agreed that this application shall be considered a part of the contract for insurance. * * *

"I also agree that there will be no liability on the part of the Association on any policy issued under this application, unless and until the policy is issued and delivered to me, while I, and the other applicants herein named, are, as now, alive and in good health, and free from any disease.

"It is understood and agreed that the validity of any policy issued under this application shall be made to depend upon the physical condition of the applicant, and if any applicant above named is at the time this application is made, or at the time the policy of Insurance applied for is delivered to him or her, in bad health and not in good health and free from disease, then said policy shall be null and void, and of no effect, and it is hereby made a condition precedent to the validity of any policy issued upon this application, that the applicant herein and each of them, be at the time of delivery of said policy, in good health, and free of all disease, otherwise

said policy of insurance shall never become a binding contract.

* * * * *

"I affirm that I have read the foregoing questions and warrant that the answers are true and correct. Signed, this 27th day of August, 1938.

"Mrs. Emma Tatum
"Signature of Applicant."

Based upon the statements in the above application the policy of insurance was issued. That policy contains these additional provisions:

"This certificate is issued in consideration of the application therefor, a copy of which is on file at the Home Office of the Association, and hereby made a part hereof * * * and it is further issued and accepted by the member subject to all the conditions, stipulations, covenants and exceptions set forth on the following pages hereof, and which are made a part hereof the same as if here fully recited over the signature hereto. * * *

"General Provisions: * * *

"8. The Association shall not be liable for any claim under the terms of this certificate unless this certificate shall have been delivered to the member while such member was alive and in good health. * * *

"9. Agents are not authorized to make, alter or discharge any provisions of this certificate, and any representations made by any agent that are not contained in this certificate shall not bind the Association.

* * * * *

"11. The Member in subscribing his name hereto states that he has read this certificate, and understands and accepts same, subject to the conditions and provisions contained herein and represents and declares that all answers and statements, given in the application for this certificate are true and correct, and that on the date this certificate was delivered he was in good health."

Mrs. Tatum, who resided in Comanche, Texas, sought out the Insurance Association at Brownwood and made the above application. Her husband was not present at the time, did not know the insurance was being applied for, and, according to her testimony, he was opposed to insurance. She had accompanied her husband to doctors for advice and treatments.

The jury found (1) that W. L. Tatum had cancer at the time Mrs. Tatum applied for the insurance, August 27, 1938. (2) That he had been attended by a physician "within the two years prior to the application" then made by Mrs. Tatum. (3) That Mrs. Tatum did not reveal to the agent of the Association the name of the "attending physician." (4) That she did not tell the Association's agent he (Tatum) had to be treated for cancer prior to August 27. (5) That Tatum died within two years from the date of the application and certificate.

Dr. Jewel Daugherty testified that he "treated him (Tatum) between January 1938 and June 1938." Concerning the physical condition of the deceased Tatum, this doctor testified: "In the beginning it was a skin cancer on the lower lip or epithelioma. Later on, it developed into a fungus infection.

"Q. Then he had two diseases at that time? A. This is my opinion." '

Dr. C. W. Drake, a specialist in the treatment of cancer by x-ray, testified:

"Q. What was the nature of your treatment of him? A. I treated him for cancer of the lower lip.

"Q. What was his condition as far as the stage of the disease, when he came to you? A. It was far advanced.

"Q. In your opinion as a medical expert, how long had he been suffering from the disease when he came to you? A. I would say a year or more.

"Q. How long did you treat him, and what were the dates of such treatment? A. Treatment began on the 21st of June, 1938, the last treatment I gave him was on August 16, 1938. I gave him five treatments.

"Q. When you last treated him, what was his condition? A. His condition was worse when I last treated him than when he first came to me."

Dr. Drake suggested that the patient go to specialist Dr. Bedford Shelmire, of Dallas, for further treatment. Deceased and his wife went to such doctor but were unable to contact him.

Dr. R. Nelson Smith, of Comanche, called by the plaintiff, testified in part as follows: "I treated Mr. W. L. Tatum for cancer but I was not called in the case until about November 1, 1938, before he died upon January 12, 1939 of the cancer.

* * * Mr. Tatum talked to me several times on the street during the summer of 1938, along in July, about his condition, asking me what he should do, but never came to me for treatment. At that time he wore only a small patch on his lip which got larger during the next six weeks or so. I stated upon the death certificate of Mr. Tatum that Mr. Tatum had cancer as far back as January, 1938, because that is when he told me it began. He told me that before he died in January of 1939. He died of the cancer * * *." When the plaintiff made "Claimant's statement and affidavit" she was asked: "6. Did the deceased have or ever have any of the following diseases * * * cancer? A. Fungus growth on face, commonly known as cancer. If so, how long standing? Four or five months."

In the death certificate Dr. Smith stated: "I hereby certify that I attended deceased from July 1, 1938 to January 12, 1939. I last saw him alive on January 12, 1939. The principal cause of death and related causes of importance were as follows: Carcinoma of the lower lip." The dictionary defines Carcinoma as "a form of cancer."

By the terms of this policy it was not to take effect as an obligation of the insurance association unless the insured was in good health at the time of its delivery. The evidence in this case is such that reasonable minds cannot differ in the conclusion that W. L. Tatum was not in good health at the time the policy was applied for and delivered. Since the undisputed evidence shows that at such time the insured was affected with a mortal disease which subsequently produced his death, the defendant incurred no liability upon the policy and a verdict should have been instructed for the defendant and judgment entered accordingly. The condition precedent which was essential to the effecting of the insurance contract never existed. The law authorizes no recovery under such circumstances. American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294; Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602; Federal Life Ins. Co. v. Wright, Tex.Civ.App., 230 S. W. 795, affirmed, Tex.Com.App., 248 S.W. 325; Southern Surety Co. v. Benton, Tex. Com.App., 280 S.W. 551; American Nat. Ins. Co. v. Melton, Tex.Civ.App., 29 S.W. 2d 795; American Nat. Ins. Co. v. Jarrell, Tex.Civ.App., 50 S.W.2d 875; Indianapolis Life Ins. Co. v. Powell, 133 Tex. 547, 127 S.W.2d 172.

In American Nat. Ins. Co. v. Lawson, supra [133 Tex. 146, 127 S.W.2d 295], the Supreme Court, in an opinion by Judge Hickman, approved the following statement of the rule of law in American Nat. Life Ins. Co. v. John R. Corley Co., Tex.Civ. App., 73 S.W.2d 598: " 'It is well settled in this state that a stipulation in a life insurance policy that such policy shall not take effect unless the insured is in sound health at the date the policy is delivered is, unless restrained by some statute, valid and enforceable, and it is immaterial whether the insured knew of his condition in that respect or not. His good faith in believing that he was in sound health at the time the policy was delivered will not authorize a recovery if in fact at the time of the delivery of the policy he was suffering from an ailment of a substantial nature which continued and ultimately caused his death.' " Citing many authorities.

In the alternative, the plaintiff alleged that if her husband was not in good health as originally alleged, then the defendant association waived the policy provision relating to good health, etc. It is unnecessary to discuss this contention in detail. There could be no such waiver on the part of appellant unless it had knowledge of W. L. Tatum's diseased condition at the date of the application, and it conclusively appears from the testimony that it possessed no such information. The jury also found that Mrs. Tatum did not reveal to the insurer that her husband had cancer or that he had been treated therefor during the two years preceding the date of application, nor did she name any attending physician. Under such circumstances there would be no waiver under the authorities. Carolina Ins. Co. v. Christopher, 130 Tex. 245, 106 S.W.2d 138, 109 S.W.2d 467; Southern Surety Co. v. Benton, Tex.Com.App., 280 S.W. 551; Ætna Life Ins. Co. v. Shipley, Tex.Civ. App., 134 S.W.2d 342; Leonard v. Woman's Ben. Ass'n, Tex.Civ.App., 114 S.W. 2d 1215; Brady Mut. Life Ins. Ass'n v. Pfiester, Tex.Civ.App., 113 S.W.2d 268; 43 Tex.Jur. p. 893, secs. 3 & 4.

Further, there is no evidence that any agent had authority to waive or attempted to waive any provision of the policy. The policy provides "Agents are not

authorized to make, alter or discharge any provisions of this certificate and any representations made by any agent that are not contained in this certificate shall not bind the association." The record discloses that the applicant for the insurance was necessarily aware of such provision. Hence, there is in this respect no basis for the claim of waiver. Southern Surety Co. v. Benton, Tex.Com.App., 280 S.W. 551; Texas State Mut. Fire Ins. Co. v. Richbourg, Tex.Com.App., 257 S.W. 1089; Leonard v. Woman's Ben. Ass'n, Tex.Civ.App., 114 S.W.2d 1215; Brady Mut. Life Ins. Ass'n v. Pfiester, Tex.Civ.App., 113 S.W. 2d 268.

The matters discussed are controlling in the disposition of this appeal. It is unnecessary to discuss the other contentions of appellee or appellant.

For the reasons assigned, the judgment of the trial court is reversed, and since the case has been fully developed and the testimony in the main documentary, judgment is here rendered in favor of appellant.