## TEXAS PRUDENTIAL INS. CO. v. CORN.
### No. 14861.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 19, 1947.

Rehearing Denied Oct. 17, 1947.

Levy & Levy, of Galveston, and King, Dawson & Jones, of Wichita Falls, for appellant.

Allen, Locke & Kouri, of Wichita Falls, for appellee.

HALL, Justice.

Appellee Valta M. Corn obtained judgment in the 89th District Court of Wichita County, Texas, against appellant Texas Prudential Insurance Company, upon an insurance policy in the sum of $1,715.00, face value of the policy, plus $500.00 attorneys' fees, plus 12% penalty, less $45.96, which represented the balance of insurance premiums for the full policy year.

The policy was issued upon the life of the late husband of Valta M. Corn, to-wit, Dalpha W. Corn, of Wichita Falls, Texas, appellee having been named beneficiary in the policy. The policy was issued on May 11, 1944, and provided for the quarterly premium payments of $11.49 each, to be paid in advance on or before the 11th day of each May, August, November, and February. The facts show that quarterly premiums were paid on May 11, 1944, August, 1944, and November, 1944. Then the deceased began to pay monthly premiums in the sum of $4.14, which the policy relates to be the correct monthly payment. These payments were made consistently to and including the month of March, 1946, and monthly receipts were issued for each monthly premium paid. The three quarterly premium payments, plus the 14 monthly premium payments, paid the policy up through April 10, 1946. The policy, and under the statute, allowed a 30 day grace period which would keep the policy in force until May 11, 1946. The insured died on May 30, 1946.

Appellee's contentions can more easily be ascertained from the court's finding of

facts and conclusions of law, which are as follows:

"I. The Court finds that on May the 11th, 1944, the Defendant issued its policy of insurance No. 98945 on the life of Dalpha W. Corn in the sum of $1,715.00, in consideration of the quarterly premium of $11.49, in which the Plaintiff, Valta M. Corn, is named as beneficiary.

"II. The Court finds that on May the 30th, 1946, Dalpha W. Corn died in Wichita Falls, Texas.

"III. The Court finds that under the terms of the contract the premiums were payable quarterly, that three quarterly and fourteen monthly installment payments were paid by insured and accepted by the company, and payment made by insured's wife on May the 29th, 1946, in the sum of $8.28, and accepted by M. B. White, agent of the company, when policy was not lapsed.

"IV. The Court further finds that quarterly payments were due under contract in the sum of $11.49, and that insured paid fourteen monthly payments or installments on quarterly premium which gave insured credit on payments of $3.41 over-payment.

"V. I find that the February the 11th, 1946, payment and the March the 11th payment of $4.14 each, with credit due insured of $3.41 on over-payment of the quarterly premium, made a total of $11.55, and paid up the February the 11th quarterly payment due and extended the insurance to May the 11th, 1946, that the grace period of thirty days extended the policy to June the 11th, 1946.

"VI. I find that the policy had not lapsed when insured's wife paid company agent $8.28 on the quarterly payment due May the 11th, 1946."

"Conclusions of Law

"I. I find that the insured's policy is a binding obligation in the sum of $1,715.00, payable to Valta M. Corn upon the death on May the 30th, 1946, of the insured, Dalpha W. Corn.

"II. I conclude that the contract provided for quarterly payments in the sum of $11.49, and the company, by accepting partial or monthly payments on the quar-

terly premium due February the 11th, 1946, are estopped from setting up the date for the beginning of the thirty-day grace period before May the 11th, 1946, which extended the policy to June 11th, 1946; that giving the insured credit for amount overpaid on quarterly premium, of $3.41, added to the amount of $8.28, overpaid the quarterly premium of February the 11th by the amount of twenty cents.

"III. I conclude that by the company's acceptance of partial payment on the quarterly premium due February the 11th, 1946, the company waived the balance due on said quarterly payment, and the amount, if any, due was a debt to the company by insured.

"IV. I conclude that the Plaintiff is entitled to recover in this suit against the Defendant the sum of $1,715.00, with interest from this date at the legal rate, plus 12% penalty, and attorneys' fees in the sum of $500.00.

"V. The Court finds as a matter of law, taking into consideration the custom prevailing between the insured and insurer, said policy was in full force and effect at the time of the death of D. W. Corn; and that, by reason of its acceptance of the premiums, it is estopped to deny that the policy was in full force and effect on May the 30th, 1946."

The contention of appellant is found in its six brief points, quoted as follows:

"First Point: The court erred in holding the policy had not lapsed on May 30, 1946, when it was originally issued May 11, 1944, and there having been paid three quarterly premium payments and 14 monthly premium payments.

"Second Point: The court erred in holding that the agent, M. B. White, could extend time for payment of the premiums due upon the insurance contract.

"Third Point: The court erred in holding the company to be estopped to claim the lapse of the policy.

"Fourth Point: The court erred in holding that the insured could pay premiums on a monthly basis, receiving and retaining monthly premium receipts for each payment, and then at the end of a 14 month period have such total premium payments

applied on quarterly premium payments at a reduced premium rate.

"Fifth Point: The court erred in holding that the company was estopped to claim that the policy in question had lapsed, because there was no evidence to support such a finding.

"Sixth Point: The court erred in holding that the company waived the balance due on the quarterly premium due on February 11, 1946, because there was no admissible evidence to support such a finding."

■ After a review of all the testimony in the light most favorable to appellee, we find that all six of appellant's points of error are well taken, even though it is conceded that appellee testified that the agent M. B. White contracted with her orally that the monthly payments would be construed to be a partial payment of a quarterly premium, yet we find that M. B. White was not such an official as could authorize a change in the written contract. The policy has the usual written provision, designating the persons or officers of the company who have the authority to make, or modify the contract, or extend the time for paying any premium and M. B. White was not one of those persons.

The contract further provides that the company shall not be bound by any promise or statement heretofore or hereafter made by any other person. Section 3 of the policy provides: " * * * Premiums are due and payable in advance at the Home Office of the Company in the city of Galveston, Texas, but may be paid to an authorized agent of the Company only in exchange for the Company's receipt therefor signed by its President, Vice-President, or Secretary and countersigned by the designated agent as evidence of such payment. The mode of premium payment may be changed from annual to semi-annual or quarterly installments or vice versa at the premium rates in use by the company at the date hereof, but the payment of any premium shall not continue this policy in force longer than the time for which the premium payment is made except as otherwise provided herein. No notice of a premium, and no acceptance of a premium

after maturity or elsewhere than at its Home Office (and then only by one of the above named officers), is to be deemed a precedent or a waiver of any provision of this contract, no matter how often repeated.

"Except as herein otherwise provided, this Policy shall lapse in event of non-payment of any premium or installment thereof."

Each of the monthly payments were acknowledged by a receipt duly executed by the company, from its main office in Galveston, and shows to be monthly premium payments on the policy in question. Nothing is shown to support appellee's theory that said monthly payments were in effect an installment on a quarterly payment. Even the amount of the money does not add up to one third of the quarterly payment, but the same does correspond to the amount of a monthly payment as stated in the policy.

■ It is the contention of appellee that since the policy states the following: "The company accepts payments, or premiums, annually, or in installments as stated below, and upon written request made at its home office, the premium payments on this policy may be adjusted accordingly, at the end of any policy year, 'Annually, $43.34; semi-annually, $22.56; quarterly $11.49; monthly, $4.14.'" the fact that such written request was not made by her to change the premium payment from quarterly to monthly, that such could not be waived by both parties. We find that the monthly receipts are signed by the Secretary of the company, and therefore, the written request was waived by the company, and both parties having acquiesced in the waiver of same, they are bound by it.

■ To uphold the trial court's findings in this case that appellee, in paying the monthly installments of $4.14 for a three month period, did thereby over-pay the quarterly premium to such extent that an accumulation of the over-payment, by appellee, at the end of the quarterly period was used in such a manner as to extend the effect of the insurance policy past the date of the death of the deceased, without

a stipulated agreement and/or an acquiescence in such a plan by the proper authorities of the company, would be the rewriting of the terms of the contract without authority from the proper officials of said company. And by the same token, lay the predicate for a company in a state of facts reverse to this, to defeat payment of a policy under a contract, where the party started paying a monthly premium of $4.14 per month, and later started paying an annual premium of $43.34 without written notice. The company accepting the annual premium could then allege that the full year's premium had not been paid as the company did not receive the sum of $49.68, the amount of the monthly payments. We think that in such a state of facts that the company would be estopped from claiming that they were not liable because the insured failed to notify them in writing that he was changing his mode of payment from monthly to annually.

Irrespective of what White informed appellee, appellee was still bound by the provisions of the written contract. Art. 4732, R.C.S., reads as follows: "No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: 1. That all premiums shall be payable in advance either at the home office of the company or to an agent of the company upon delivery of a receipt signed by one or more of the officers who are designated in the policy."

Article 5063, R.C.S., reads: "Any person who shall solicit an application for insurance upon the life of another shall in any controversy between the assured and his beneficiary and the company issuing any policy upon such application be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy." Sanchez v. American Nat. Ins. Co., Tex.Civ. App., 40 S.W.2d 240.

In the case of Universal Life Ins. Co. v. Warren, Tex.Civ.App., 126 S.W.2d 796,

writ dismissed, the policy was issued on the basis of quarterly premium payments of $3.10 each to be made, and the insured paid the agent $2.00 upon a quarterly premium and paid the balance of $1.10 to the local agent on the next premium payment date. The court held in substance that the agent could not extend credit for the premium and the policy lapsed for the non-payment of the quarterly premiums.

The $8.28, which the court found was a payment upon the premium and accepted by the company, was paid, in our interpretation of the record, to the local agent as a deposit for reinstatement of the policy at the option of the company. This money was returned to the appellee after the death of her husband. It was paid to the local agent the day before the death of the husband. At the same time that appellee paid the $8.28, there was prepared for her husband's signature an application for a reinstatement of lapsed insurance policy No. 98945, the one in question here. Section No. 11 in said application recites the following: "Do you believe that you are now in absolutely first class health, (If not, give full details of any sickness or impairment you may have)" and the answer written out for deceased to sign was: Yes.

Another statement in the application for reinstatement of the policy in question, which was never signed by the deceased, is as follows: "I further agree that a reinstatement of said policy shall not take effect until a copy of this application therefor is attached to the policy and I hereby promise and agree to attach said copy upon request of the company. * * * I further agree that the reinstatement of said policy shall be null and void, and of no effect if on the date of reinstatement I am not in perfect health and entirely free from injury and/or illness."

Hence we find that the court erred in holding that the $8.28 was a payment on the old policy premiums and that the company accepted the same as such. The facts do not reveal that the money was ever sent to the company. The receipt which White gave appellee for the $8.28 was a conditional one, as follows:

"1000 Pecan

Original No. 98945 This memorandum reflects that Dalpha W. Corn has this day deposited the amount of Eight Dollars 28 Cents, for which (if accepted by the Company) proper receipt will be delivered. Date 5–29–46          8.28

/s/   M. B. White
(By Whom Received)"

■ We therefore find that whatever agreement agent White made with the insured that was in direct violation of the provisions of the policy, they were not acquiesced in by the company; and that he did not have authority to extend credit nor permit quarterly premiums to be paid on an installment plan. Universal Life Ins. Co. v. Warren, Tex.Civ.App., 126 S.W.2d 796, writ dismissed; Southland Life Ins. Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623; Rio Grande Nat. Life Ins. Co. v. Bandy, Tex.Civ.App., 110 S.W.2d 122; Donaldson v. National Life & Accident Ins. Co., Tex.Civ.App., 53 S.W.2d 136; Indianapolis Life Ins. Co. v. Powell, 133 Tex. 547, 127 S.W.2d 172; Minnesota Mutual Life Ins. Co. v. McIntosh, Tex.Civ.App., 126 S.W.2d 1031, writ dismissed; Great Southern Life Ins. Co. v. Walters et ux., Tex.Civ.App., 40 S.W.2d 886.

Appellee relies upon the following decisions to support the trial court's judgment, to-wit: National Life & Accident Ins. Co. v. Harris, 130 Tex. 168, 107 S.W.2d 361; Southern Travelers' Ass'n v. Masterson, Tex.Civ.App., 48 S.W.2d 771; American Nat. Ins. Co. v. Cleveland, Tex.Com.App., 86 S.W.2d 217; Border State Life Ins. Co. v. Monk, Tex.Civ.App., 103 S.W.2d 825; Equitable Life Ass. Soc. of United States v. Ellis, 105 Tex. 526, 147 S.W. 1152; Jefferson Standard Life Ins. Co. v. Hicks, Tex.Civ.App., 264 S.W. 1033.

We shall not undertake to set out the facts in each of these cases, but while reading them, we do not find that the facts set out in those cases are in any way similar to the facts in the instant case, and therefore, are not controlling.

The instant case appears to have been fully developed, and for the reasons above stated, the judgment of the trial court is reversed and judgment here rendered for appellant. Reversed and rendered.